[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In the present case, the plaintiff, Mutual Housing Association of Southwestern Connecticut, Inc. (MHA), appeals the CT Page 5261-LL zoning decision of the defendant, the Planning and Zoning Commission of the Town of Trumbull (Commission).[1] MHA brings this appeal pursuant to § 8-30g of the Connecticut General Statutes,[2] because the Commission's decision concerns the denial of MHA's modified affordable housing application.[3]
 I. A.
MHA is a non-profit, federally tax-exempt corporation that develops, owns, and manages affordable housing communities throughout Connecticut's Fairfield County. Return of Record (ROR), Item 1, Exh. 7. As its name indicates, MHA builds "mutual housing," which MHA describes as "a form of housing that combines the best aspects of home ownership, rental, and cooperative housing in a single affordable housing model. Residents of mutual housing do not own their units, but they do have the pride and security usually associated with home ownership. Through their Membership and Occupancy Agreement, residents have a lifetime right to live in their units and may request that this right be passed to an immediate family or household member. Mutual housing also provides residents with a voice in the decisions that affect their lives and their community through their membership on MHA's Board of Directors and the various resident committees that are established to run each mutual housing community. Mutual housing provides safe, secure, affordable housing to families with a wide-mix of incomes, ranging up to 80%-100% of the area median income. Mutual housing residents pay a one time membership fee of $2,500 and monthly housing charges based on a percentage of their gross incomes, from 25-30% depending on the actual operating costs of each community. If household income increases or decreases, the monthly charge can be adjusted accordingly. Each mutual housing community is developed, owned, and managed by the Mutual Housing Association of Southwestern Connecticut. Although MHA is a non-profit corporation, each mutual housing community pays real estate taxes and contributes to the ongoing support of the towns and neighborhoods where they are located." ROR, Item 1, Exh. 7; see also ROR, Item 13k (document entitled "What is a Mutual Housing Association").
 B.
As of approximately October 7, 1993, MHA held an option to purchase a parcel of land located at 88 White Plains Road, CT Page 5261-MM Trumbull, Connecticut. Plaintiff's Exh. 1. The subject property is bounded to the east by White Plains Road; to the south by Beardsley Parkway and a daycare center; to the east by single family homes in Trumbull's Residence AA zone; and, to the north by an affordable housing development known as Stonebridge Estates, located in Trumbull's Planned Affordable Housing Zone. See i.e. ROR, Item 12a, Exh. 3, pp. 7-12. The subject property consists of 5.9 acres of undeveloped land that is presently zoned Residence AA, a zone in which single family homes on lots of at least one acre are the principal use permitted as of right. ROR, Item 31.
MHA obtained the option to purchase the subject property with the hopes of building a mutual housing community with affordable housing for, among others, the less affluent elderly and young members of the community and town employees. ROR, Item 1, Exh. 5 (Section 1 of MHA's proposed regulation states the intent and purpose of MHA's proposed zone). MHA therefore filed an affordable housing application with the Commission on August 31, 1994, which, in effect, made a two-fold request: First, the application requested the Commission to amend the text of the Trumbull Zoning Regulations by adopting a proposed regulation in order to create a new "Housing Opportunity Development" (HOD) zone, a zone where the maximum housing density per gross acre would be 12 units, and, a zone where no less than 50 percent of the units would be permanently affordable to those earning 80 percent or less of the area median income. ROR, Item 1, Exhs. 2 and 5. Second, the application requested the Commission to rezone the subject property to the newly proposed HOD zone so that MHA could construct 66 multi-family housing units. ROR, Item 1, Exh. 2.
The Commission held public hearings on MHA's affordable housing application on November 9, 1994 and November 29, 1994. See ROR, Items 13 and 15 (hearing transcripts). To establish the need for affordable housing in Trumbull, MHA presented to the Commission the State of Connecticut 1993 Affordable Housing Appeals Procedure List, promulgated by the Department of Housing as required by § 8-30g(f), which lists the percentage of affordable housing in each Connecticut town. ROR, Item 1, Exh. 12. According to the 1993 list, only 2.03 percent of Trumbull's 11,266 housing units qualify as affordable housing under § 8-30g
and about 97 percent of those affordable housing units are denominated "elderly" housing.[4] Id. CT Page 5261-NN
In addition to the evidence relevant to the shortage of affordable housing in Trumbull, suffice it to say at this point that there was lengthy testimonial and sizeable documentary evidence submitted in support of and in opposition to MHA's application. See ROR. The court has reviewed the entire record and will discuss specific testimonial and/or documentary evidence as necessary in the body of this opinion.
On January 18, 1995, the Commission denied MHA's application. ROR, Item 19. Legal notice of the denial was published in the February 1, 1995 edition of The Connecticut Post. ROR, Item 20.
On February 15, 1995, as permitted by General Statutes §8-30g(d), MHA submitted a proposed modification of its original affordable housing application, attempting to address some of the objections to the original application raised by the Commission. ROR, Items 23 and 23a. On March 21, 1995, the Commission held a special meeting to review MHA's modified application. At the special meeting, MHA and the consultants for the Town of Trumbull were each provided with the opportunity to present evidence on the modified application. ROR, Item 26; see also ROR, Item 26a (DES report on modified application); ROR, Item 26b, (Assistant Town Engineer Brian Smith's written comments on modified application); ROR, Item 26c (letter from Mr. Edwin Merritt, the Superintendent of Schools, concerning modified application). At the meeting's conclusion, the Commission denied MHA's modified application for the following nine reasons:
 1. The existing Town of Trumbull zoning regulations contain two separate affordable housing sections. The existing regulations should serve as the basis for any proposals for affordable housing developments in Trumbull. It is not acceptable to amend the zoning regulations by adding a third separate affordable housing regulation.
 2. The proposed amendment does not require the submission of a site plan as part of the zoning amendment process. Such a plan is required to demonstrate the impact of the project on the resources of the town prior to approval of the zoning amendment. It is not possible to fully evaluate the impact of the amendment unless a plan which demonstrates impacts is presented by the applicant. CT Page 5261-OO
 3. The proposed amendment does not require that all town engineering standards be included in roadway and utility design.
 4. The proposed amendment does not include adequate parking areas for residents and visitors. Lack of adequate on-site parking will lead to parking along the roadways within the development, resulting in unsafe conditions.
 5. The proposed amendment does not include adequate active recreational open space. This amenity is considered critical to maintain the quality of life for the residents of the development and to prevent overcrowding.
 6. The proposed amendment does not require safe separating distances between buildings. The minimum acceptable separating distance is 50 feet unless residential sprinkler systems are required for all buildings.
 7. The maximum height allowed for the buildings in the proposed amendment is in excess of the maximum allowed for all residential developments of a similar nature in the Town of Trumbull. The maximum height limitation of 35 feet must not be exceeded.
 8. The modifications to the revised proposal do not address the reasons for disapproval presented when voting on the original version. Trumbull has existing zoning regulations for building affordable housing on a parcel of land of the size proposed in these applications. The existing regulation also applies to affordable housing adjacent to residential zones. If this parcel of land does not meet the requirements of the existing regulation and it can be demonstrated that it is suitable for a similar purpose, then the existing regulation should be revised. It is not prudent to approve a new regulation when existing regulations can be revised whenever it is justifiable. Although the idea of eliminating costs associated with detailed planning makes economic sense to developers, the Town of Trumbull is not permitted to avoid costs dependent on detailed planning when it comes to providing schools, police, fire safety, and general provisions related to health, safety, and welfare. The precedent of creating new regulations CT Page 5261-PP for individual applications undermines the intent of any zoning because the zoning regulation becomes a record of what already exists, and no longer regulates what will be developed in the future.
 9. The need for an engineered and detailed site plan was evidenced by the applicant's own revised conceptual plan. For example, the separating distance between buildings is shown as 32' on the conceptual drawing, but the proposed regulation states a 30' minimum requirement. If the proposed regulation were adopted, there would be no requirement for 32' between buildings. Therefore, the site plan is misleading, and does not reflect what is stated in the proposed regulation.
 Since the proposed regulation was not adopted, the zone change [of the subject property] to a Housing Opportunity Development Zone could not be approved.
ROR, Item 26. Legal notice of the Commission's decision was published in the March 30, 1995 edition of The Connecticut Post.
Plaintiff's Amended Appeal ¶ 20; Defendant's Answer to Amended Appeal, ¶ 20; ROR, Item 27.
 C.
The Amended Complaint alleges that the Commission's decision denying MHA's modified affordable housing application violates § 8-30g(c) in that the reasons for denial: (a) are not supported by sufficient evidence in the record; (b) are not necessary to project a substantial public interest in health, safety, or other matters which the Commission may legally consider; (c) do not clearly outweigh the need for affordable housing in the Town of Trumbull; and, (d) could have been protected by reasonable changes to the modified application.[5]
Id., ¶ 21. The Amended Complaint therefore requests the court to reverse the Commission's decision and order the Commission to grant MHA's modified application. Both parties submitted pre-hearing briefs.
On April 17, 1996, the court held a hearing on MHA's Amended Complaint, at which time both parties were fully heard. At the conclusion of the hearing, counsel for the Commission made a request that the court view the subject property before reaching a decision on the merits, to which request MHA did not object. CT Page 5261-QQ The court therefore viewed the subject property on April 18, 1996.
 II.
Before reaching the merits of MHA's appeal, as a threshold matter, the court must ascertain if MHA complied with the statutory provisions of § 8-30g in order to determine whether the court has jurisdiction to entertain this action. Simko v.Zoning Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). "[A] statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . [Such] provisions are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Brackets in original; internal quotation marks omitted.) Id.
Pursuant to General Statutes § 8-30g(b), any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units may appeal such decision by the commission and shall proceed in conformance with §§ 8-8, 8-9, 8-29, 8-30, 8-30a, as applicable, except as otherwise provided in § 8-30g. General Statutes § 8-30g(b). The appeal must be commenced within the time period for filing appeals as set forth in §§ 8-8, 8-9, 8-29, 8-30, 8-30a, as applicable. Id.
Section 8-8 applies to the present case. See General Statutes § 8-8. Section 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . . The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."[6] General Statutes § 8-8 (b). Subsection (e) provides that "[s]ervice of legal process for an appeal . . . shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. . . ." General Statutes § 8-8 (e). CT Page 5261-RR
Accordingly, pursuant to § 8-30g(b), an affordable housing applicant that is aggrieved by the decision of a commission to deny or approve with restrictions the person's affordable housing application must commence an appeal of the decision, in accordance with § 8-8 (e), within fifteen days from the date notice of the decision was published. General Statutes §§ 8-30g(b) and 8-8. There is, however, one exception to this rule. Section 8-30g(d) provides that "[f]ollowing a decision by a commission to reject an affordable housing application . . . the applicant may, within the period for filing an appeal of such decision, submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. The filing of such a proposed modification shall stay the period for filing an appeal from the decision of the commission on the original application. . . . Within the time period for filing an appeal on the proposed modification as set forth in sections 8-8,8-9, 8-28, 8-30, or 8-30a, as applicable, the applicant may appeal the commission's decision on the original application and the proposed modification in the manner set forth in this section. . . ." General Statutes § 8-30g(d). Thus, if the affordable housing applicant files with the commission a modification of its original application within fifteen days from the date the decision denying the original application was published, then the period to file the appeal is stayed. Id. If the board thereafter decides to deny the modified application, then the applicant may appeal the decision denying the original application and/or the decision denying the modified application by commencing an appeal in accordance with § 8-8 (e), within fifteen days from the date the decision denying the modified application was published. Id.
In the present case, MHA filed a modified affordable housing application with the Commission on February 15, 1995, within fifteen days from February 1, 1995, the date the Commission published its decision denying MHA's original affordable housing application. ROR, Items 20-23. Therefore, the time period to file an appeal of the decision was stayed. General Statutes § 8-30g(d).
The Commission subsequently denied MHA's modified application and published notice of its decision on March 30, 1995. See Plaintiff's Amended Appeal, ¶ 20; Defendant's Answer to Amended Appeal, ¶ 20; ROR, Item 27. MHA herein appeals the Commission's decision denying the modified application. The court CT Page 5261-SS finds that MHA, as the holder of an option to purchase the subject property,[7] is aggrieved by the Commission's decision.Goldfield v. Planning Zoning Commission, 3 Conn. App: 172, 176-77,486 A.2d 646 (1985). The court further finds that MHA commenced the present action on April 12, 1995, within fifteen days from the date the Commission's decision denying the modified application was published, by serving a true and attested copy of the Citation and Complaint in the present action on both the Trumbull Town Clerk and the Chairman of the Commission. See Sheriff's Return. Accordingly, the court finds that it has jurisdiction over this action because MHA strictly complied with the provisions of § 8-30g.
 III.
The standard of review of an affordable housing land use appeal under § 8-30g is not the same as the ordinary standard of review that applies to an appeal from the decision of a zoning authority. In the State of Connecticut, "[t]raditional land use policies were not solving Connecticut's affordable housing problem;" Wisniowski v. Planning Commission, 37 Conn. App. 303,317, 655 A.2d 1146 (1995); thus, the legislature enacted §8-30g "to deal with the particular problem of the lack of affordable housing in Connecticut." Id., 314. Indeed, the legislative history of § 8-30g reveals that "the key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state." WestHartford Interfaith Coalition, Inc. v. Town Council, 228 Conn. 498,511, 636 A.2d 1342 (1994).
Section 8-30g has several provisions that operate to encourage and facilitate the development of affordable housing. Chief among those provisions are subsections (b) and (c), which, respectively, remove affordable housing applications from the traditional land use statutory scheme and prescribe unique procedures that govern affordable housing applications. General Statutes § 8-30g(b) and (c). Subsection (b) states that "[a]ny person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . may appeal such decision pursuant to the procedures of this section." General Statutes § 8-30g(b). Subsection (c) states that "[u]pon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based CT Page 5261-TT upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development." General Statutes § 8-30g(c).
"The burden of proof established in § 8-30g is a specific, narrow standard that a commission must satisfy on appeal." Wisniowski v. Planning Commission, supra, 37 Conn. App. 313. "The burden of proof in § 8-30g dictates the only effective reasons for a commission to deny an affordable housing application. That burden necessarily establishes the standards of the underlying proceeding. Section 8-30g, therefore, affects the administrative proceedings concerning affordable housing 
applications, as well as the appeal proceedings." Wisniowski v.Planning Commission, supra, 37 Conn. App. 314. Accordingly, in the present case, the Commission must prove that it has satisfied the four requirements of § 8-30g(c) when it denied MHA's modified affordable housing application.
In addition to the burden of proof set forth in § 8-30g, the trial court applies the customary, traditional concepts governing the judicial review of a zoning authority's decision.West Hartford Interfaith Coalition, Inc. v. Town Council, supra,228 Conn. 512 (commenting that the "trial court properly applied traditional concepts of judicial review, where appropriate, to its review of the [zoning authority's] decision" under § 8-30g). "In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in a `legislative' or `administrative' capacity. `The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function.'" Kaufman v.Zoning Commission, 232 Conn. 122, 150, 653 A.2d 798 (1995).
In the present case, the Commission was acting in its legislative capacity when it denied MHA's modified application. The modified application requested the Commission to amend the Trumbull Zoning Regulations and to rezone the subject property to a HOD zone. Amending zoning regulations, creating new zones, and CT Page 5261-UU rezoning property are legislative acts. Morningside Associationv. Planning and Zoning Board, 162 Conn. 154, 157-58, 292 A.2d 893
(1972) (local zoning authority acts in legislative capacity when it enacts or amends its regulations); Park Regional Corp. v. TownPlan and Zoning Commission, 144 Conn. 677, 682, 136 A.2d 785
(1957) (fixing zones is a legislative act); Coppola v. ZoningBoard of Appeals, 23 Conn. App. 636, 641, 583 A.2d 650 (1990) (same); West Hartford Interfaith Coalition, Inc. v. Town Council,
supra, 228 Conn. 505 n. 10. (rezoning property is a legislative act) (further discussing the difference between a zoning authority acting in its legislative capacity as opposed to its administrative capacity). Thus, whenever appropriate, the court herein will apply to the review of the Commission's decision the traditional concepts of judicial review governing the review of a legislative decision.
The standard of review of a decision of a zoning authority acting in its legislative capacity is well established: "`[I]t is not the function of the court to retry the case. Conclusions reached by a zoning commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the commission. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the commission supports the decision reached." (Internal brackets omitted.) WestHartford Interfaith Coalition, Inc. v. Town Council, supra,228 Conn. 512-13. "`Where a zoning commission has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The zone change must be sustained if even one of the stated reasons is sufficient to support it. . . . The principle that a court should confine its review to the reasons given by a zoning commission does not apply to any utterances, however incomplete, by the members of the commission subsequent to their vote. Rather, it applies where the commission has rendered a formal, official, collective statement of reasons for its action.' . . . Thus, `where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . and attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision.'" (Citations omitted; CT Page 5261-VV internal brackets omitted.) Id., 513.
It is within this framework, statutorily and traditionally defined, that the court reviews the record of this case.
 IV.
The Commission, in a collective statement, listed nine reasons for denying MHA's modified application. ROR, Item 27. Therefore, in accordance with the traditional concepts of judicial review, the court will not go behind that official collective statement and attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision. West Hartford Interfaith Coalition, Inc. v.Town Council, supra, 228 Conn. 512-13. The court will review the reasons the Commission listed for denying MHA's modified application and determine whether the Commission has satisfied its statutory burden under § 8-30g.
 A.
The Commission's first and eighth reason for denying the modified application was that the existing Town of Trumbull zoning regulations contain two separate affordable housing sections and the existing regulations should serve as the basis for any proposals for affordable housing developments in Trumbull. Section 8-30g, however, does not allow the Commission to use such a broad statement as nonconformance with its existing regulations as a reason to deny an affordable housing application. See Wisniowski v. Planning Commission, supra,37 Conn. App. 317. Under § 8-30g, the Commission must consider the rationale behind its existing regulations to determine whether the regulations are necessary to protect substantial
public interests in health, safety, or other matters that MHA's proposed regulation would possibly jeopardize. Id., 317-18. The Commission must further determine that the substantial public interests outweigh the need for affordable housing and they cannot be protected by reasonable changes to the proposed application. Id.
The "apparent" rationale for the Commission's insistence that developers use Trumbull's existing affordable housing regulations is to promote the development of affordable housing throughout town.[8] See i.e., ROR, Item 13, pp. 40-42 (statements of CT Page 5261-WW Commissioners Halaby and Chory); pp. 66-71 (testimony of Attorney Robert Lesser). The Commission claims that its existing affordable housing regulations ensure that no two affordable housing developments will be constructed within one mile from one another. The Commission argues that avoiding the social evils associated with grouped "project" housing is a substantial public interest that the Commission is entitled to consider. Presumably, the Commission also argues that this substantial public interest outweighs the need for affordable housing in Trumbull.
There is authority that supports the Commission's claim that scattered affordable housing is in theory a proper and salutary goal because it avoids the project-like environment where large concentrations of economically deprived citizens tend to gravitate. See National Associated Properties v. Planning Zoning Commission, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 518954 (Nov. 17, 1993, Mottolese, J.), aff'd on other grounds, 37 Conn. App. 788, ___ A.2d ___ (1995). A review of Trumbull's existing affordable housing regulations, however, does not support the Commission's claim that Trumbull's existing affordable housing regulations promote the separation of affordable housing developments.
Trumbull's two existing affordable housing regulations are Article XIII — the Planned Affordable Housing Zone (PAHZ) — and Article XIV — the Affordable Housing Development (AHD) zone. ROR, Item 31, pp. 90-101. Article XIII indeed expressly prohibits the establishment of a PAHZ within one mile from any other PAHZ; id., p. 90 (Section 3). Likewise, the location and size requirements of the AHD regulation effectively preclude the development of one AHD next to another AHD. Id., p. 97 (Section 5). There is no regulation, however, that restricts the establishment of a PAHZ next to a AHD. Id. Thus, conceivably, two affordable housing developments, consisting of a maximum of 50 acres, could be developed adjacent to one another. See id., p. 90 (Section 3 — PAHZ permitted in residential zones) and p. 97 (Section 5 — AHD permitted in or within 200 feet of Industrial zones); see also id. (zoning map indicates location of residential and industrial zones).
Moreover, even if the court looked beyond this loophole in the regulations and assumed that the existing regulations ensure the distribution of affordable housing developments throughout town, the Commission has failed to carry its burden of proving that this arguably substantial public interest of scattered CT Page 5261-XX affordable housing clearly outweighs the need for affordable housing in the town of Trumbull. The record before the Commission revealed that only 2.03 percent of Trumbull's 11,266 housing units qualify as affordable housing under § 8-30g and about 97 percent of those affordable housing units are denominated "elderly" housing. ROR, Item 1, Exh. 12. Thus, the evidence on the record indicates that in Trumbull there is a considerable deficiency of affordable housing for individuals other than the elderly. MHA's proposed development would help fill this vacuum. This weighs heavily against the public interest of scattered affordable housing.
Yet, even if the demonstrated need of affordable housing in Trumbull for individuals other than the elderly did not itself outweigh the "public interest" of scattering affordable housing developments throughout town, there are additional facts that would tip the scale in any event. The record reveals that there is a shortage of buildable land in Trumbull. The 1984 Trumbull Plan of Development indicates that as of 1983, Trumbull was over 90 percent developed and development in Trumbull was "approaching the point of `saturation' where most easily buildable land has been developed. . . . It is at the point where the `finishing touches' of services and facilities must be added or left out for good. . . . The main point now is that relatively little land is left." ROR, Item 30, p. 23.
This scarcity of land along with the fact that the existing affordable housing regulations contain minimum/maximum site acreage requirements of 3 to 10 acres and 30 to 40 acres, leads the court to the conclusion that Trumbull's existing affordable housing regulations accomplish more than scattering affordable housing throughout town: The regulations have the effect of discouraging the development of affordable housing because of the minimum/maximum acreage and location requirements. The court asked the Commission's counsel during the hearing how many undeveloped sites in Trumbull could meet the acreage and location requirements of the existing affordable housing regulations. No answer was provided. A town cannot remove itself entirely from § 8-30g by adopting affordable housing regulations that effectively preclude the development of affordable housing. SeeWest Hartford Interfaith Coalition, Inc. v. Town Council, supra,228 Conn. 511.
As a final point, there is no evidence in the record that the construction of MHA's proposed affordable housing development CT Page 5261-YY would turn this section of town into the "affordable housing section." The existing Avalon affordable housing development in Trumbull consists of 340 units on 34 acres. MHA's proposed affordable housing development would be 59 units on 5.9 acres. On the adjacent lot, the Stonebridge Estates affordable housing development is 21 units on approximately 6.77 acres. ROR, Item 1, Exh. 15. If the 340 unit, 34 acre Avalon development does not create an affordable housing section within Trumbull, it is difficult to see how a combined 80 unit, 13 acre development would constitute an affordable housing section of town.
Accordingly, the court concludes that the Commission has failed to prove that the public interest of scattered affordable housing clearly outweighs the need for affordable housing.
 B.
The second reason the Commission stated for denying the modified application is that MHA's proposed HOD regulation does not require the submission of a site plan as part of the zoning amendment process. The Commission stated that a site plan is required to demonstrate the impact of the project on the resources of the town prior to approval of the zoning amendment.
There is, however, insufficient evidence in the record to support the Commission's claim that a site plan is needed to analyze the effect the proposed development will have on the town's fiscal budget. Section 8, subsection (C) of the modified proposed regulation states that "[t]he maximum number of dwelling units permitted in the HOD shall be determined by multiplying the total number of gross acres in the HOD by 10." ROR, Item 23. Moreover, Section 11 of the proposed regulations sets forth unit mix permitted in a HOD. Id. Therefore, the proposed regulations themselves provide the necessary information for the town to estimate the total number of units and residents at MHA's affordable housing development. The Commission has failed to explain, in the record, or in its brief, how a fully engineered site plan would assist the Commission assess the impact on the town's fiscal budget.
Furthermore, in Kaufman v. Zoning Commission, supra,232 Conn. 141, our Supreme Court concluded that "§ 8-30g does notindependently require an affordable housing developer to submit to the commission, at the time of his initial application in connection with an affordable housing development, any moreCT Page 5261-ZZdetailed `plans' than an applicant who requests a zone change fora purpose other than affordable housing." (Emphasis added.) Id. Trumbull's Zoning Regulations often do not require the submission of a fully engineered site plan by an applicant who requests a zone change. For instance, Trumbull's Zoning Regulations do not require the submission of a fully engineered site plan by an applicant who requests a zone change from Residence AA to Industrial. Therefore, the Commission has been able in the past to regularly determine whether zone changes affect public interests without having access to fully engineered site plans. See id., 140.
Moreover, the lack of a fully engineered site plan will not preclude the town from subsequently reviewing the proposed development to ensure that it complies with the town's engineering and design regulations. At the evidentiary hearing the Commission conceded that even if the zone change application was granted MHA would still be required to submit fully engineered site plans to the appropriate agencies prior to beginning construction. See id., n. 13. Thus, the town can refuse to grant a building permit if the site plan fails to meet town regulations.
Therefore, the Commission has failed to prove that there is sufficient evidence in the record to support the second reason for denying the modified application.
 C.
The third reason for denial was that the proposed amendment fails to require that all town engineering standards be included in utility and roadway design. This finding is not supported by sufficient evidence in the record. As far as utility design is concerned, Section 2 of the modified proposed regulation states that "[a]ny Housing Opportunity Development (HOD) constructed within the town shall be in full compliance with all of the requirements of this regulation as well as all other applicable town ordinances and regulations." (emphasis added.) ROR, Item 23. Section 13 of the modified proposed regulation further provides that "[a]ny HOD shall be served by and any unit constructed in an HOD shall be connected to public water supply and storm and sanitary sewers providing for off-site disposal of storm waters and sewage. All telephone lines, electrical lines, and other public utilities shall be located underground." Id. CT Page 5261-AAA
There is nothing in the public record or in the Commission's brief that illustrates how these provisions enable MHA to avoid meeting the town's engineering standards for utility design. Section 2, in fact, explicitly requires compliance with all applicable town ordinances. Thus, the court concludes that there is insufficient evidence in the public record to support the finding that the modified proposed regulation fails to require conformance with the town's engineering standards for utility design.
Also, there is insufficient evidence in the record to support a finding that the modified proposed regulation does not require conformance with the town's engineering standards for roadway design. Again, Section 2 of the modified proposed regulation states that "[a]ny Housing Opportunity Development (HOD) constructed within the town shall be in full compliance with all of the requirements of this regulation as well as all other applicable town ordinances and regulations." Id. Furthermore, in the public record, the town's own consultant recognized that MHA made changes to the original proposed HOD regulation to correct identified safety concerns. ROR, Item 26. The only objection the town consultant raised was that "[t]he fire department stated that the roadway [on the proposed site] still will create problems if there are cars parked in the roadways. There was still a question about the navigability of the Trumbull Center's largest fire truck. This also relates to the point that there is insufficient parking with this proposal, with no allowance for visitor parking. There is not enough room, and if anyone parks on the roadway, it will be unsafe for emergency vehicle access." ROR, Item 26.
The Commission, however, has also failed to prove that there is sufficient evidence in the public record to support these findings. The Commission has also failed to prove that these findings are necessary to support a substantial public interest. Section 15 of the modified proposed regulation states that "[i]nterior roadways shall be at least twenty-four (24) feet wide and shall have turning radii suitable for emergency vehicles." ROR, Item 23. Thus, the modified proposed regulation requires roadways to have sufficient turning radii for emergency vehicles. If the fully engineered site plan does not provide sufficient turning radii for all emergency vehicle, then the town would be justified in denying a building permit.
Likewise, the Commission has failed to demonstrate how MHA's CT Page 5261-BBB proposed regulation fails to provide for enough parking, except by simply stating that there is not enough parking. Section 12 of the modified proposed regulation provides for two parking spaces per unit. This is the same ratio required by Trumbull's existing Planned Affordable Housing Zone (PAHZ) regulation. Cf. ROR, Item 23 (Section 12 Parking) and ROR, Item 31 (Article XIII — Planned Affordable Housing Zone Section 10 Parking). Furthermore, if one takes the parking ratio for the existing Affordable Housing Development (AHD) regulation, which has the same maximum density as MHA's proposed regulation, and apply that ratio to the unit mix MHA proposed in its modified conceptual site plan, the AHD regulation would require 128 parking spots. See ROR, Item 31, p. 99 (AHD Section 10 — Parking); ROR, Item 23a (modified conceptual site plan). MHA's regulation requires 118 parking spaces. ROR, Item 23. The Commission has offered no evidence or argument to explain why 10 less parking spots in this development creates a hazard rising to the level of a substantial public interest.
Therefore, MHA's parking ratio is the same as the parking ratio of the PAHZ, and causes nearly the same result as the AHD zone regulations. The record and the Commission's brief are silent as to why MHA should be subjected to a different parking ratio than the PAHZ or the AHD zone. The court therefore concludes that the Commission has failed to prove that there is sufficient evidence in the record to support its finding that the modified proposed regulation fails to require compliance with town engineering standards for roadway design.
 D.
The fourth reason for denying the modified application is that the proposed amendment does not include adequate parking areas for residents and visitors. The court has already concluded hereinabove that there is insufficient evidence in the record to support this finding.
 E.
The fifth reason for denying the modified application is that the proposed amendment does not include adequate active recreational open space. The Commission reasoned that this amenity is considered critical to maintain the quality of life for the residents of the development and to prevent overcrowding. CT Page 5261-CCC
The proposed HOD regulation, however, guarantees the same open space and recreational area that the existing AHD regulation provides. Section 7 of AHD regulation provides: "Maximum Coverage. The aggregate area of the various improvements in any AHD shall not exceed the following designated percentages of the total area of the property being developed as an AHD: . . . C. Areas which shall be designated as open space which shall include areas which are unimproved or which shall contain improved landscaping or which shall be used for recreational areas, shall, in the aggregate, contain not less than fifty percent of the total area." Section 8 of the proposed modified HOD regulation provides: "Maximum Density and Lot Coverage. The aggregate area of the various improvements in any HOD shall not exceed the following designated percentages of the total area of the property being developed as an HOD: . . . B. Areas which shall be unimproved or which shall contain improved landscaping or which shall be used for recreation, shall, in the aggregate, contain not less than fifty percent (50%) of the total area." This is the evidence on the record. The Commission has failed to explain why MHA should be required to set aside more than fifty percent of the total area for open space and recreation when the existing AHD regulation, a regulation the Commission argued that developers should use, provides for the same ratio as the proposed HOD regulation. Therefore, the court concludes that the Commission has failed to prove that a substantial public interest is jeopardized by a requirement in the proposed HOD regulation that at least fifty percent of the total area of the site be set aside as open space recreational area.
 F.
The sixth reason for denying the modified application was that the proposed amendment does not provide for safe separating distances between buildings. The Commission claims that the minimum acceptable separating distance between buildings is 50 feet unless residential sprinkler systems are required for all buildings.
Section 9(B) of the original proposed HOD regulation provided for twenty-five feet between buildings. Section 10(E) of MHA's proposed HOD regulation provides that "[t]he minimum separation distance between any two residential buildings shall be thirty feet." The Commission has failed to prove that there is sufficient evidence in the record to support a finding that thirty feet between buildings is unsafe. Thirty feet is enough CT Page 5261-DDD distance to extend the stabilizing pads from the fire trucks. It provides enough room for the fire trucks to get between the buildings. Thirty feet also exceeds the State Building Code's requirements for separation distances for buildings of this nature. Unsupported statements that a minimum of fifty feet is required will not be considered by this court as sufficient evidence to support this otherwise unsupported conclusion.
 G.
The seventh stated reason for denying the modified application is that the maximum height allowed for the buildings in the proposed amendment, 35 feet, exceeds the maximum height allowed for all residential developments of a similar nature in the Town of Trumbull by one foot. The court is disturbed that the parties could not reconcile this difference by themselves. Even more troubling, however, is the fact that the Commission failed to explain how maintaining the 35 foot requirement was necessary to protect a substantial public interest, much less how `t could clearly outweigh the need for affordable housing. Without further discussion, the Commission has failed to carry its burden of proving that the maximum height requirement is needed to protect a substantial public interest that clearly outweighs the need for affordable housing in Trumbull.
 H.
The Commission's eighth reason is discussed in § 1V A of this opinion.
 I.
Finally, the ninth reason the Commission stated for denying the modified application was that the need for an engineered and detailed site plan was evidenced by the applicant's own revised conceptual plan. The Commission claimed that MHA's conceptual site plan depicts a 32 feet minimum separating distance between buildings, while the proposed regulation requires a 30 feet minimum separation distance between buildings. The Commission argues that if the proposed regulation were adopted, there would be no requirement for 32 feet between the buildings. Therefore, the Commission argues that the conceptual plan is misleading, and does not reflect what is stated in the proposed regulation.
The court is unable to follow the Commission's reasoning. The CT Page 5261-EEE issue is whether a minimum distance of 30 feet between buildings is sufficient. If the conceptual plan shows 32 feet, it is not misleading. It falls within the proposed regulations. If the final site plan depicts 30 feet, it would also meet the proposed regulations. The question is not whether the conceptual plan meets the regulations exactly. The question the Commission needed to address was whether a 30 feet minimum separation requirement was sufficient. There is nothing in the record to indicate that it is not sufficient. There is a statement from the Chief of Trumbull's Volunteer Fire Department that he would like 50 feet, ROR, Item 13, pp. 77-79, but there is not sufficient evidence in the record indicating that 30 feet is not sufficient.
 V.
The court therefore concludes that the Commission has failed to carry its burden under § 8-30g. Accordingly, pursuant to § 8-30g(c), the court sustains plaintiff's appeal, reverses the decision of the Commission and orders the Commission to approve MHA's application.
Koletsky, J.