JOSEPH P. WISNIOWSKI ET AL. *v.* PLANNING COMMISSION OF THE TOWN OF BERLIN ET AL.
(13181)

DUPONT, C. J., and O'CONNELL and LANDAU, Js.

Argued December 7, 1994—decision released March 21, 1995

*Kenneth R. Slater, Jr.,* with whom, on the brief, was *Stephen J. Anderson,* for the appellants (defendants).

*Karen P. Blado,* with whom was *Ann E. Lynch,* for the appellees (plaintiffs).

DUPONT, C. J. This appeal arises from the denial by the planning commission of the town of Berlin of the plaintiffs' affordable housing subdivision application. The plaintiffs appealed that denial to the trial court, which sustained the appeal and ordered the commission to approve the plaintiffs' application. We affirm the judgment of the trial court.

Certain facts are relevant to this appeal. The plaintiffs, Joseph Wisniowski and Stanley Wisniowski, filed, in accordance with General Statutes § 8-30g, an affordable housing development application[1] with the Berlin

---

[1] General Statutes § 8-30g provides in relevant part: "AFFORDABLE HOUS-ING LAND USE APPEALS PROCEDURE. (a) As used in this section:

planning commission (commission) to subdivide a 14.5 acre lot into thirty[2] smaller lots. Six of the thirty lots were designated as affordable housing in the development proposal.

The property that the plaintiffs sought to subdivide was zoned R-43 by Berlin. This zoning designation requires that the minimum size of any lot be at least 43,000 square feet.[3] The plaintiffs proposed that their property be divided into lots ranging in size from 8000 square feet to 23,000 square feet. The plaintiffs' proposal did not, however, disturb the zone's single-family dwelling requirement. Although the size of the proposed lots did not comply with the requirements of the R-43 designation, the plaintiffs did not file an application with the Berlin zoning commission to change the zone of the property or to otherwise amend the regulations and zoning map to permit the undersized lots. Instead, the plaintiffs filed their application with the planning commission.

The commission held a public hearing on the subdivision application and then denied the plaintiffs' appli-

(1) 'Affordable housing development' means a proposed housing development . . . (B) in which not less than twenty per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income, for at least twenty years after the initial occupation of the proposed development . . . .''

"[General Statutes] Sec. 8-39a. 'AFFORDABLE HOUSING' DEFINED. As used in this title, 'affordable housing means housing for which persons and families pay thirty per cent or less of their annual income, where such income is less than or equal to the area median income for the municipality in which such housing is located, as determined by the United States Department of Housing and Urban Development."

[2] The original application of the plaintiffs provided for the property to be divided into thirty-two lots. The application was subsequently modified to provide for a division into thirty lots.

[3] This is approximately one acre in size.

cation to subdivide the property for nine reasons, including the following three: "(1) The plan does not comply with existing regulations for the R-43 zone nor with the existing affordable housing regulations. The commission is therefore prohibited from approving this proposal by Section 8-26 of the statutes. . . . (5) The applicant did not seek the remedy of an amendment to the zoning regulations or amendment to the zoning map. . . . (7) The retaining walls on the site plan present safety and maintenance problems for the homeowners. Lots with slopes in excess of fifteen percent do not comply with the subdivision regulations and the proposed walls are an unacceptable solution."[4] The plaintiffs then appealed to the Superior Court from the commission's decision and served both the planning commission and the town on appeal.

The trial court evaluated the reasons that the commission asserted for rejecting the application and found that these reasons were insufficient to satisfy the commission's burden of proof under § 8-30g, the affordable housing land use appeals statute.[5] The burden of

[4] The six remaining reasons are as follows: "(2) There was insufficient demonstration that there would be no adverse impact on the adjacent neighborhood. (3) It was not demonstrated that affordable housing units will be of comparable size and workmanship as intended by the legislature in its affordable housing legislation including Section 8-2g. (4) There was no information given on housing prices nor any financial justification given for the proposed density bonus. . . . (6) There is insufficient usable area on-site for recreational purposes to support the increased density. . . . (8) The property is within a watershed and recharge area for potential wells and future water supply. No evidence has been presented to indicate that the development will not be detrimental to future water supply development. (9) Approval of this application would subvert the planning process for affordable housing as outlined in the Plan of Development."

Some of these issues were resolved on a prior remand by the trial court to the commission.

[5] General Statutes § 8-30g (c) provides: "Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited

proof is on the commission to prove the denial is necessary to protect substantial public interests in health, safety or other matters, and that those interests clearly outweigh the need for affordable housing and that those interests cannot be protected by reasonable changes to the affordable housing development. General Statutes § 8-30g (c). The court found that this burden was not met. The trial court noted, however, that the issue of the degree of the slope of the land of two lots might comprise a valid safety concern. Those two lots, however, were not designated as being available for affordable housing. Consequently, the trial court ordered the commission to approve the application, but it also remanded the potential problem of the degree of the slope of the two lots to the commission for further discussion to determine whether that safety concern regarding the degree of the slopes could be reasonably addressed or whether the two lots were, in fact, unbuildable.

The commission then sought certification in this court, which we granted. On appeal, the commission claims that the trial court (1) improperly concluded that § 8-30g overrides both the requirement that an applicant seek a zone change prior to obtaining subdivision approval pursuant to General Statutes § 8-26, if the development proposed does not comply with municipal zoning regulations, and the uniformity requirement

for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it."

Subsection (b) provides in pertinent part: "Any person whose affordable housing application is denied . . . may appeal such decision pursuant to the procedures of this section. . . ."

of General Statutes § 8-2, and (2) illegally usurped the legislative and administrative authority of the planning and zoning commissions of Berlin.

## I

The first question that we must address is whether this appeal is taken from a final judgment.[6] "The expeditious resolution of disputes counsels against appellate review of trial court rulings that do not finally dispose of all the issues between the litigating parties. . . . Interlocutory orders . . . are immediately appealable only '(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them.' " *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 409, 521 A.2d 566 (1987).[7]

"A judgment by a trial court ordering further administrative proceedings cannot meet the first prong . . . because, whatever its merits, the trial court's order has not terminate[d] a separate and distinct proceeding. The more difficult question is whether the trial court's order so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted). Id., 409–10.

---

[6] Although this issue was not briefed by the parties, they were asked by this court to address the issue of whether there was a final judgment at the time of their oral argument because of our concern that our subject matter jurisdiction was implicated.

[7] *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 202 Conn. 405, discusses administrative appeals under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. After this case was written, however, effective July 1, 1989, the UAPA was amended. "For appeals governed by the Uniform Administrative Procedure Act, General Statutes § 4-183 (j) provides in relevant part: 'For purposes of this section, a remand is a final judgment.' " *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 129 n.6, 653 A.2d 798 (1995). The reasoning of *Schieffelin*, however, remains applicable to cases not falling under the UAPA.

In *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 653 A.2d 798 (1995), a § 8-30g appeal, the Supreme Court, determined that the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., does not govern zoning cases. In those administrative appeals that are not governed by the UAPA if the trial court remands the matter to the administrative agency for further consideration, the scope of the proceedings on remand dictates whether there has been a final judgment from which the parties can appeal. *Byars* v. *Whyco Chromium Co.*, 33 Conn. App. 667, 668, 637 A.2d 805 (1994). If the remand is for ministerial action, then it will be treated as if there is a final judgment, but if the remand is for discretionary action, then there is no final judgment. *Szudora* v. *Fairfield*, 214 Conn. 552, 556, 573 A.2d 1 (1990); *Matey* v. *Estate of Dember*, 210 Conn. 626, 630, 556 A.2d 599 (1989).

The distinction is premised on the reasoning that when a trial court concludes that an administrative ruling was in error and orders further administrative proceedings on that very issue, it is considered a final judgment "in order to avoid the possibility that further administrative proceedings would simply reinstate the administrative ruling, and thus would require a wasteful second administrative appeal to the Superior Court on that very issue. . . . A trial court may alternatively conclude that an administrative ruling is in some fashion incomplete and therefore not ripe for final judicial adjudication. Without dictating the outcome of the further administrative proceedings, the court may insist on further administrative evidentiary findings as a precondition to final judicial resolution of all the issues between the parties. . . . Such an order is not a final judgment." (Citations omitted.) *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 202 Conn. 410.

*Kaufman* v. *Zoning Commission*, supra, 232 Conn. 128, held that there was a final judgment where the

trial court, after concluding that the affordable housing application must be granted, remanded the matter to give the commission the opportunity to "impose reasonable conditions and changes with respect thereto." In finding that there was a final judgment, the Supreme Court reasoned, "[w]e attach significance to the fact that the trial court's judgment did not order further evidentiary determinations on remand. Although the trial court's remand may have *allowed* the commission to hear additional evidence in order to determine whether to impose 'reasonable conditions' on or to make 'reasonable changes' in the application, the remand in no way *required* the commission to conduct such an inquiry.

"Even more important, the trial court's judgment required the commission to approve the plaintiff's application. With respect to this central issue, the trial court's decision so concludes the rights of the parties that further proceedings cannot affect them. . . . After explicitly resolving *all* [of] the issues in favor of the plaintiff' . . . the trial court remanded the case only for the limited purpose of allowing the commission to impose reasonable conditions on or make reasonable changes to the development, if it so chose. Because the proceedings on remand cannot deprive the plaintiff of the zone change that the trial court has ordered to be approved, the trial court has rendered a final judgment and this court has subject matter jurisdiction over the commission's appeal." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 130–31.

We face a similar situation. Here, the trial court rendered a final decision on the affordable housing application, and held that the application should be granted. The proceedings on remand cannot affect the trial court's decision because the two lots that are the sub-

ject of the remand are not included in the six lots designated as affordable housing lots. The approval of the application is final, no matter what is determined on remand relative to two of the thirty lots. As in *Kaufman*, the remand does not *require* a further evidentiary hearing. We conclude that this court has subject matter jurisdiction over the appeal and now turn to the merits of the defendant's appeal.

## II

The commission's first claim is that the trial court should have found that it was necessary for the plaintiffs to seek a zone change prior to submitting a § 8-30g subdivision proposal that does not comply with the underlying zoning of an area. The commission refers this court to General Statutes § 8-2,[8] which requires uniformity of zoning regulations, and General Statutes § 8-26,[9] which prohibits planning commissions from approving subdivision applications that do not comply with applicable zoning regulations. The commission claims that because these traditional zoning requirements compel the planning commission to deny all sub-

---

[8] General Statutes § 8-2 provides in relevant part: "REGULATIONS. . . . Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district . . . ." See *Veseskis* v. *Bristol Zoning Commission*, 168 Conn. 358, 360, 362 A.2d 538 (1975).

[9] General Statutes § 8-26 provides in relevant part: "APPROVAL OF SUBDIVISION AND RESUBDIVISION PLANS. WAIVER OF CERTAIN REGULATION REQUIREMENTS. APPLICATIONS INVOLVING INLAND WETLANDS AND WATERCOURSES. . . . The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter, provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations. . . ."

division applications that do not comply with the underlying zoning of an area, the trial court should have affirmed the commission's denial of the plaintiffs' affordable housing subdivision application on that ground.

The commission argues that the plain language of § 8-30g indicates that it is an appeals act only, and, therefore, the fact that an appeal is brought under § 8-30g should not affect the standards and law applicable at the administrative level of land use decisions regarding affordable housing. Further, the commission argues that the legislative history of § 8-30g recognizes the need for a developer to comply with existing zoning or to seek zoning amendments to obtain approval for proposed developments. Thus, the commission's basic claim is that the trial court improperly concluded that § 8-30g overrides the requirements of §§ 8-26 and 8-2.

Our conclusion is that the plain and unambiguous language of § 8-30g does not contemplate a denial of an affordable housing subdivision application on the ground that it does not comply with the underlying zoning of an area.

" 'In construing a statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . .' " (Citations omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* 228 Conn. 498, 507–508, 636 A.2d 1342 (1994).

General Statutes § 8-30g (c) provides in pertinent part: "Upon an appeal . . . the burden shall be on the commission to prove, based upon the evidence in the

record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development." This burden of proof applies to "every type of application filed with a commission in connection with an affordable housing proposal." *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 509. This includes affordable housing subdivision applications filed with planning commissions.

The burden of proof established in § 8-30g is a specific, narrow standard that a commission must satisfy on appeal. The plain and unambiguous language does not list noncompliance with zoning regulations as a reason to affirm the denial of an affordable housing subdivision application. The commission argues, however, that even if § 8-30g does not, itself, contemplate the denial of an affordable housing subdivision application on the ground of zoning noncompliance, § 8-30g should not affect the traditional land use policy as found in §§ 8-2 and 8-26. Therefore, despite the burden of proof established in § 8-30g, according to the commission, it must nevertheless deny an affordable housing application that does not comply with the zoning regulations, and the trial court must affirm the denial on that ground.

To the extent possible, statutes should be reconciled. *Spring* v. *Constantino*, 168 Conn. 563, 572, 362 A.2d 871 (1975). When two statutes conflict, however, as in the present case, the more specific legislation governs over the general legislation; *McKinley* v. *Musshorn*, 185

Conn. 616, 624, 441 A.2d 600 (1981); and the latest expression of the legislature prevails over a conflicting prior enactment. *State* v. *Tyson*, 195 Conn. 326, 331, 487 A.2d 1091 (1985). The affordable housing land use appeals act was enacted to deal with the particular problem of the lack of affordable housing in Connecticut. *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 511. It was not enacted as an amendment to the general zoning law. Section 8-30g is the later expression of the legislature and it prevails in the event of any conflict with §§ 8-26 or 8-2.

The commission contends that according to the plain language of the statute, § 8-30g applies only to appeals. This argument, however, assumes that administrative proceedings exist in a vacuum. The burden of proof in § 8-30g dictates the only effective reasons for a commission to deny an affordable housing application. That burden necessarily establishes the standards of the underlying proceeding. Section 8-30g, therefore, affects the administrative proceedings concerning affordable housing subdivision applications, as well as the appeal proceedings. The narrow rigorous standard of § 8-30g dictates that the commission cannot deny an application on broad grounds such as noncompliance with zoning. Section 8-30g anticipates that there will be many different types of applications that may be brought to many different types of agencies. *Kaufman* v. *Zoning Commission*, supra, 232 Conn. 137; *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 510–11. For example, in *Kaufman*, the application was made to the zoning commission, in *West Hartford*, to the town council, and in the present case, to the planning commission. Whichever zoning authority is asked to deal with the application, a zone change will necessarily be embodied in the application, either as to use, or as to bulk, as is the case here. If no zone change were

involved, there would be no need for an application for affordable housing. An application may not be rejected just because it involves a zone change. *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 510–11. No formal zone change application is needed because the act is designed to allow circumvention of the usual exhaustion of zoning remedies and to provide prompt judicial review of a denial of an application. *Huntington Branch NAACP* v. *Huntington*, 844 F.2d 926 (2d Cir. 1988); *Huntington Branch NAACP* v. *Huntington*, 689 F.2d 391 (2d Cir. 1982), cert. denied, 460 U.S. 1069, 103 S. Ct. 1523, 75 L. Ed. 2d 947 (1983). Embodied in the plaintiffs' application for an affordable housing subdivision is a zone change. *Huntington Branch NAACP* v. *Huntington*, supra, 689 F.2d 391.

The requirement of uniformity of § 8-2 "does not militate against the grant of a specific exception to a general zoning requirement so long as the exception is reasonable and for the general community benefit rather than for the benefit of a single landowner." *Lavitt* v. *Pierre*, 152 Conn. 66, 75, 203 A.2d 289 (1964). Clearly, affordable housing legislation is for the benefit of the entire community, as well as for that of the state. *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, supra, 228 Conn. 511.

The conclusion that zone conformity is not a mandatory prerequisite to approval of a subdivision application is consistent with the intent of the legislature as reflected by the legislative history of the affordable housing law. During the house debate, when asked by Representative Robert Farr if the fact that a proposed plan called for a multifamily dwelling in a single-family zone would in and of itself be a basis for denial of an application, Representative William J. Cibes, Jr., responded: "[T]he answer is no, not per se. The municipality might have very good grounds for not having multifamily dwellings in the particular area. The soil

type, the capacity of the infrastructure, various reasons such as that might have been a reason for the municipality not to adopt a particular zone for that particular area, but per se, there would not—it would not [be] a reason for rejecting this application." 32 H.R. Proc., Pt. 30, 1989 Sess., pp. 608–609. This indicates that zoning conformity is not necessarily required in an affordable housing application.

The commission refers to this passage and two others to support the position that the legislative history infers that the legislature clearly intended that zoning conformity be required. First, the commission cites Senator Richard Blumenthal as stating that "it is important to understand that these decisions involve specific projects on particular pieces of land and do not provide for any kind of general zoning override." 32 S. Proc., Pt. 12, 1989 Sess., p. 4048. Next, the commission cites another passage from the floor debate in which Representative Cibes commented that "no one is suggesting that we're going to build a 20-story high rise on two acres of land out in Roxbury. . . . This [statute] is a step forward. It provides some meaningful standards. It is within the constraints of the existing zoning statute. It is a narrow procedure which is available only to a few kinds of developers, developers who propose to build affordable housing and I think that it is important that we recognize this and recognize the limited nature of this action." 32 H.R. Proc., Pt. 30, 1989 Sess., pp. 10662–64. The commission claims that these passages evidence the intent of the legislature to require zoning conformity.

The "key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state." *West Hartford Interfaith Coalition, Inc.* v. *Town Council,* supra, 228 Conn. 511. The legislative history indicates that the legislature intended to accomplish this goal by creating spe-

cific legislation that affects only affordable housing applications, not the overall zoning scheme. Therefore, applications that do not fit into the definition of an affordable housing application are not affected by § 8-30g. If an application does satisfy the definition of an affordable housing application, however, then the commission must satisfy the increased burden of proof in order to deny the application effectively. Under these circumstances, nonconformity of zoning is not, per se, a reason to deny the application. The legislature did not intend zoning nonconformity to block an affordable housing subdivision application.

The commission claims that if we affirm the trial court's decision, we will render affordable housing applications unworkable by local land use commissions acting in their administrative capacity because land use commissions would be forced to guess which regulatory standards should apply to proposals that do not comply with local zoning. We disagree.

Section 8-30g is not part of the traditional land use statutory scheme. Traditional land use policies did not solve Connecticut's affordable housing problem, and the legislature passed § 8-30g to effect a change. The commission makes the mistake of looking at § 8-30g applications as though they were traditional zoning applications.

Section 8-30g does not allow a commission to use its traditional zoning regulations to justify a denial of an affordable housing application, but rather forces the commission to satisfy the statutory burden of proof. The factors that the commission considers when reviewing affordable housing subdivision applications are the same as those considered when it passes subdivision regulations.[10] Instead of simply questioning whether

---

[10] General Statutes § 8-25 (a) provides in relevant part: "Such regulations shall provide that the land to be subdivided shall be of such character that

the application complies with those regulations, however, under § 8-30g, the commission considers the rationale behind the regulations to determine whether the regulations are necessary to protect *substantial* public interests in health, safety or other matters.

The commission asserts that it will not have any guidance in making its decisions, and, therefore, that there will be no conformity in the decisions. Conformity is provided by § 8-30g because each decision must be justified in terms of the factors enumerated in the statute. Essentially, every subdivision application must be approved unless there is a justifiable reason to deny the application. The commission must look at the rationale behind its regulations to determine if there is a substantial interest, outweighing the need for affordable housing, that must be protected by the denial of an application.

We conclude that § 8-30g was correctly interpreted by the trial court to allow the plaintiffs to seek subdivision approval for affordable housing without first seeking a zone change.

it can be used for building purposes without danger to health or the public safety, that proper provision shall be made for water, drainage and sewerage and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provision shall be made for protective flood control measures and that the proposed streets are in harmony with existing or proposed principal thoroughfares . . . especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. Such regulations shall also provide that the commission may require the provision of open spaces, parks and playgrounds when, and in places, deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. . . ."

General Statutes § 8-25 (c) provides: "The regulations adopted under subsection (a) of this section, may, to the extent consistent with soil types, terrain, infrastructure capacity and the plan of development for the community, provide for cluster development, and may provide for incentives for cluster development such as density bonuses, or may require cluster development."

## III

The commission argues that the trial court improperly usurped the discretion of the Berlin zoning and planning commissions, first, by ordering approval of the plaintiffs' development, despite the proposal's noncompliance with the established zoning, and, second, by undertaking its own evaluation of whether the subdivision proposal was consistent with other zones within the town.[11]

Certain facts are relevant to this claim. After the trial court determined that zoning compliance was not a mandatory prerequisite to subdivision approval under § 8-30g, the court addressed the issue of the denial based on noncompliance under traditional land use law. The court noted that the proposal presented a situation in which the variation was not a use variation, but rather a bulk and lot variation. Because this type of variation is not totally inimical to the underlying zoning scheme, the court concluded that the commission had a basis, in town wide bulk and lot requirements, for evaluating the application.

The commission first argues that when the trial court ordered approval of the plaintiffs' application it essentially rezoned part of Berlin without the zoning commission's approval. We have already concluded that zoning compliance is not mandatory prior to approval of an affordable housing subdivision application. Land use commissions derive all of their power from the General Statutes. *Capalbo* v. *Planning & Zoning Board of*

---

[11] The commission argues, in a footnote in its brief, that the trial court's analysis calls into question the constitutionality of one acre zoning in Connecticut. The commission, however, did not analyze this issue. "Both this court and our Supreme Court have declined to review constitutional claims, deeming them to have been abandoned, when the defendant has not briefed and analyzed the claim." *State* v. *Harrison*, 30 Conn. App. 108, 122–23, 618 A.2d 1381 (1993). We choose not to review this claim.

*Appeals*, 208 Conn. 480, 490, 547 A.2d 528 (1988). The burden of proof in § 8-30g (c) takes away some of the discretion that local commissions have under traditional land use law and allows the reviewing trial court to effect a zone change if the local commission cannot satisfy the statutory requirements for its denial of an application. Section 8-30g (c) provides that if the commission fails to satisfy its burden of proof, the trial court, "*shall* wholly or partly, revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." (Emphasis added.)

Here, the trial court found that the commission had failed to satisfy its burden of proof under the statute and accordingly reversed the decision of the commission. Although the effect of that action was to approve a subdivision application that did not comply with the existing zoning of the area, the decision did not usurp the authority of Berlin's zoning commission.

Second, the commission claims that the trial court usurped the commission's authority when the court conducted its own policy review of the application based on standards it gleaned by reviewing regulations applicable to other properties and uses in Berlin.

"[W]here a zoning commission has formally stated the reasons for its decision the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." *DeMaria* v. *Planning & Zoning Commission*, 159 Conn. 534, 541, 271 A.2d 105 (1970).

Here, the commission asserted noncompliance with existing zoning as one reason for denying the plaintiffs'

application. The trial court found that noncompliance was not, itself, a reason to deny the plaintiffs' application.

Because the trial court was concerned with the issue of standards by which a commission could judge an application, the trial court examined the town wide zoning plan to determine whether the bulk and lot sizes of the proposed development complied with Berlin's regulations. This review may have been superfluous, but it was not a usurpation of the commission's authority. A determination of whether a plan is in violation of public health and safety regulations is an appropriate exercise of authority under § 8-30g.

The judgment is affirmed.

In this opinion the other judges concurred.