[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 12, 1996
In this case the named plaintiff/appellant is Christian Activities Council, Congregational (CACC). The named defendants/appellees are the Town Council of the Town of Glastonbury (Town Council), Alice H. Robinson, Debra C. Smith, Thomas P. Gullotta, Allison Caxide, Robert A. Howe, Thomas T. Hashem, Jr., and The Land Heritage Coalition of Glastonbury, Inc. (Land Heritage). Through various defaults and by agreement of counsel at the May 15, 1996 hearing, the only parties remaining in this action are plaintiff CACC and defendants Town Council and Land Heritage.
The Metropolitan District Commission (MDC), a public water company, is the owner of 33.42 acres of land (subject property) located on the northerly side of Hebron Avenue and the westerly side of Keeney Street in the Town of Glastonbury, Connecticut. The subject property is presently zoned "Reserved Land"; see Amended Appeal, ¶ 11; Amended Answer, ¶ 11; a zone created to "place lands and buildings owned . . . by . . . a public service company furnishing water . . . in a special zone to ensure the proper, orderly and planned growth of such land in accordance with surrounding development and the Glastonbury Plan of Development." See Return of Record (ROR), Sec. VII, Exh. B (Glastonbury's Zoning Regulations), p. 44.
The plaintiff CACC is the contract purchaser of the subject CT Page 5569 property. ROR, Sec. II., Exh. A. CACC filed an application with the Town Council seeking to change the zone of the subject property from "Reserved Land" to "Rural Residence," with the intention of building on the subject property 28 single family detached affordable housing units. The Town Council denied CACC's zone change application. CACC appeals the Town Council's decision pursuant to General Statutes § 8-30g.
CACC claims that the Town Council's denial of its application violates General Statutes § 8-30g because the Town Council's reasons for denial are not supported by sufficient evidence in the record and are not necessary to protect a substantial public interest in health, safety, or other matters which the Town Council may legally consider under §§ 8-2 and 8-3. Amended Appeal, ¶ 24. CACC further claims that even if the Town Council's reasons for denial are supported by sufficient evidence and are necessary to protect a substantial public interest, the reasons do not clearly outweigh the demonstrated need for affordable housing in the Town of Glastonbury. Id. Moreover, CACC claims that the Town Council's concerns could have been protected by reasonable changes to the application, and the Town Council was required by § 8-30g(c) to propose those changes before denying CACC's application. Id. The defendants deny these claims.
The factual and procedural background of the case is as follows. On February 3, 1994, CACC filed an application with the Town Council that requested the rezoning of the subject property from "Reserved Land" to "Rural Residence."[1] ROR, Sec. I, Exh. A. Pursuant to §§ 14.2(d) and 16 of the Town of Glastonbury Building Zone Regulations, the Town Council requested a recommendation on the application from Glastonbury's Town Plan and Zoning Commission (PZ Commission). ROR, Sec. VII, Exh. B (Town of Glastonbury Building Zone Regulations), pp. 145, 148; ROR, Sec. I, Exh. E.
The PZ Commission convened to consider the application. See ROR, Sec. I, Exh. E. On April 11, 1994, the PZ Commission members conducted an on-site inspection of the subject property.Id. On April 13, May 2, and May 16, 1994, the PZ Commission held public hearings on the application. Id. On June 2, 1994, the PZ Commission held a Special Meeting on the application where the members adopted thirteen findings concerning CACC's application.Id. On June 9, 1994, the PZ Commission sent the Town Council a letter that informed the Town Council of its findings and recommended the approval of the application subject to the CT Page 5570 consideration or several factors. ROR, Section I, Exh. B.
Commencing on June 15, 1994, the Town Council held a duly noticed public hearing on CACC's application. Amended Appeal, ¶ 16; Amended Answer, ¶ 16. The public hearing was continued to June 28 and July 14, 1994. Amended Appeal, ¶ 20; Amended Answer, ¶ 20.
At the June 15 public hearing, nothing substantive concerning CACC's application was discussed because CACC requested Town Council members Googins and Dufford to consider recusing themselves. ROR, Sec. III, Verbatim Minutes of Town Council's June 15 Public Hearing. The Town Council continued the public hearing until June 28 in order to seek and obtain legal advice on the recusal request. Id.
At the June 28 public hearing, Googins and Dufford refused to recuse themselves. ROR, Sec. VIII, Transcript of June 28, 1994 Town Council Public Hearing. Thereafter, the substantive portion of the public hearing on CACC's application began, but was not concluded. The hearing was continued to July 14, 1994. At the July 14 hearing, additional presentations were heard on behalf of all concerned, and the public hearing was closed on July 14, 1994. Id.
On August 23, 1994, the Town Council convened to discuss and decide CACC's application. ROR, Sec. VIII, Transcript of August 23, 1994 Town Council Meeting. After considerable discussion, the Town Council adopted the following:
 Be it resolved that the Glastonbury Town Council (Zoning Authority) deny the application of Christian Activities Council Congregational for a change of zone from Reserved Land Zone to Rural Residence Zone, 33.42 acres, Assessor's Lot N61 Hebron Avenue based upon the following reasons:
 1. The proposed development would create a new road exiting onto an already acknowledged dangerous curve on Hebron Avenue just west of its intersection with Keeney Street in an area of high risk, serious traffic accidents and high volume. The proposed development would increase existing traffic hazards and would expose residents of the proposed development and others who travel in that intersection to unreasonable risks. CT Page 5571
 2. It is in the best interest of the Town to provide open space in order to meet local and regional needs. Further, the 1994 Town Plan of Development recommends that MDC lands in the Keeney Street area be considered for Town purchase and preservation as open space.
 3. The MDC holds the subject property in public trust and development should only be considered upon the completion of a comprehensive plan for all MDC holdings in the Keeney Street area.
 4. The proposed development could endanger a potential future water supply source as identified by Environmental Planning Services Report dated April 17, 1991 prepared for MDC at Page 9.
 5. These considerations outweigh the need for affordable housing at this site, especially because of the availability of other parcels in town suitable for affordable housing.
 6. In addition to the specifically stated reasons the members voting in favor of this motion to deny the application also incorporate their individual stated reasons as already set out in the record.
ROR, Sec. VIII, Transcript of August 23, 1994 Town Council Meeting, pp. 28-29, 32-33, 42, 45-46, 52-53; see also id., pp. 8-9 (reasons Adamson voted in favor); 9-10 (reasons Dufford voted in favor); 10-12, 25-26 (reasons Stearns voted to deny); 12-13 (reasons Purtill voted to deny); 14-15, 26 (reasons Monaco voted to deny); 16-18, 25 (reasons Broder voted to deny); 18-19
(reasons Flanagan voted in favor); 19-22 (reasons Cavanaugh voted to deny); and 22-25 (reasons Googins voted to deny).[2] Legal notice of the Town Council's decision on the application was published in The Hartford Courant on August 30, 1994. Amended Appeal, ¶ 22; Amended Answer ¶ 20. This appeal followed in timely fashion.
CACC brought this appeal under General Statutes § 8-30g. The court finds that it has jurisdiction over this appeal CT Page 5572 because: (1) CACC is a person that had its affordable housing development application denied; (2) CACC is aggrieved because it has an interest in the subject property as the contract purchaser; (3) CACC commenced this action on September 12 and 13, 1994 within fifteen days from August 30, 1994, the date the Town Council published its decision denying CACC's affordable housing application in The Hartford Courant. See Amended Appeal, ¶ 22; Amended Answer, ¶ 22.
CACC brings this appeal under General Statutes § 8-30g. Section 8-30g is a remedial statute, "enacted to deal with the particular problem of the lack of affordable housing in Connecticut." Wisniowski v. Planning Commission, 37 Conn. App. 303,314, 655 A.2d 1146 (1995). Indeed, the legislative history of § 8-30g reveals that the key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state. West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 511,636 A.2d 1342 (1994).
Section 8-30g has several provisions that operate to encourage and facilitate the development of affordable housing. Chief among those provisions are subsections (b) and (c). which respectively remove affordable housing applications from the traditional land use statutory scheme and prescribe uncommon procedures that govern affordable housing applications. General Statutes § 8-30g(b) and (c); see also Wisniowski v. PlanningCommission, supra, 37 Conn. App. 317 ("[t]raditional land use policies were not solving Connecticut's affordable housing problem and the legislature passed § 8-30g to effect a change").
Subsection (b) states that "[a]ny person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . may appeal such decision pursuant to the procedures of this section." General Statutes § 8-30g(b). Subsection (c) states that "[u]pon an appeal taken under subsection (b) of this section the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health CT Page 5573 safety or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development." General Statutes § 8-30g(c).
"The burden of proof established in § 8-30g is a specific, narrow standard that a commission must satisfy on appeal." Wisniowski v. Planning Commission, supra, 37 Conn. App. 313. "The burden of proof in § 8-30g dictates the only effective reasons for a commission to deny an affordable housing application. That burden necessarily establishes the standards of the underlying proceeding. Section 8-30g, therefore affects the administrative proceedings concerning affordable housing 
applications, as well as the appeal proceedings." Id., 314. Thus, in the present case the Town Council bears the burden of proving that it complied with the four precepts embodied within §8-30g(c).
Apart from the mandates of § 8-30g(c), wherever appropriate, the trial court should still apply customary, traditional concepts of judicial review to an appeal under §8-30g. West Hartford Interfaith Coalition, Inc. v. Town Council,supra, 228 Conn. 512 (commenting that the "trial court properly applied traditional concepts of judicial review, where appropriate, to its review of the [zoning authority's] decision" under § 8-30g). "In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in a `legislative' or `administrative' capacity. `The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function.'"Kaufman v. Zoning Commission, 232 Conn. 122, 150, 653 A.2d 798
(1995). Accordingly, it is of added significance to the standard of review in the present case whether the Town Council was acting in its legislative or administrative capacity when it denied CACC's application. See id., 150-51 (contrasting the legislative function of a zoning body with the administrative function).
The Town Council was acting in its legislative capacity when it denied CACC's application because the application requested the Town Council to rezone the subject property. Rezoning property is a legislative act. West Hartford InterfaithCoalition, Inc. v. Town Council, supra, 228 Conn. 505 n. 10. (rezoning property is a legislative act) (further discussing the CT Page 5574 difference between a zoning authority acting in its legislative capacity as opposed to its administrative capacity); MorningsideAssociation v. Planning and Zoning Board, 162 Conn. 154, 157-58,292 A.2d 893 (1972) (local zoning authority acts in legislative capacity when it enacts or amends its regulations); Park RegionalCorp. v. Town Plan and Zoning Commission, 144 Conn. 677, 682,136 A.2d 785 (1957) (fixing zones is a legislative act); Coppola v.Zoning Board of Appeals, 23 Conn. App. 636, 641, 583 A.2d 650
(1990) (same).
Therefore, the traditional concepts of judicial review governing the review of a legislative decision apply, where appropriate, to the review of the Town Council's decision in this case. The standard of review of a decision of a zoning authority acting in its legislative capacity is well established: "[I]t is not the function of the court to retry the case. Conclusions reached by a zoning commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the commission. . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the commission supports the decision reached." (Internal brackets omitted.) WestHartford Interfaith Coalition Inc. v. Town Council, supra,228 Conn. 512-13. "Where a zoning commission has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . The zone change must be sustained if even one of the stated reasons is sufficient to support it. . . The principle that a court should confine its review to the reasons given by a zoning commission does not apply to any utterances, however incomplete, by the members of the commission subsequent to their vote. Rather, it applies where the commission has rendered a formal, official, collective statement of reasons for its action.' . . . Thus, `where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . and attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision.'" (Citations omitted; internal brackets omitted.) Id., 513.
It is within this framework that the court must review the CT Page 5575 Town Council's denial of CACC's application.
Because the court finds that the defendant Town Council's decision is supported by sufficient evidence in the record, and otherwise complies with the requirements of § 8-30g(c), it is not necessary to discuss more than one reason given by the Town Council which meets the requisite standard.
Nonetheless the court would be remiss if it did not comment with disfavor on the innovative Reason #6, "in addition to the specifically stated reasons, the members voting in favor of this motion to deny the application also incorporate their individual stated reasons as already set out in the record." While it is not inappropriate for a zoning authority to adopt a particular individual reason by reference, the court holds that this "blanket bootstrap" technique does not adequately identify which individual reasons are being incorporated.
The Town Council's Reason #4, concern over endangerment of a potential future water supply source, is supported by sufficient evidence in the record.
The Town Council was justified in denying the application because the proposed development may destroy a potential future source of public water.
CACC argues that "[i]n evaluating the significance of the public water supply potential of the thirty-three acre parcel, the council placed the burden on the applicant to definitively prove the unsuitability of the parcel for ground or surface water exploitation. This was an improper attempt to impose upon the applicant the burden of proof imposed upon the council by General Statutes § 8-30g(c)." CACC therefore argues that § 8-30g(c) imposes upon the Town Council the burden to prove that the subject property is a suitable parcel for ground or surface water exploitation.
There is no support for CACC's argument. While § 8-30g
necessarily affects the administrative proceedings below, the burden of proof imposed by § 8-30g is to prove on appeal that there is sufficient evidence in the record to support the Council's decision and the decision is necessary to protect a substantial public interest. Thus, under § 8-30g, the Town Council must demonstrate that the record contains "evidence concerning the potential harm that would result if the zone were CT Page 5576 changed . . . and concerning the probability that such harm in fact would occur." Kaufman v. Zoning Commission, supra, 232 Conn. 156. Section 8-30g does not require the Town Council to prove that a definite identifiable water supply exists. "[A] zoning authority, acting in its legislative capacity, is not limited to considering only the effects of its actions that are definite or more likely than not." Id. If the zoning authority satisfies this test, nothing more is required by § 8-30g.
In the present case, historically, the subject property has been used for public water supply and has always been zoned to protect its use as a public water supply source. It is not unreasonable for the Town Council to withhold approving further development of this public land until there is sufficient evidence that demonstrates that development of the subject property or the surrounding MDC lands will not jeopardize a potential water supply source. The Town Council sought the opinion of the water company, MDC, as to the potential for public water on or near the subject property, but MDC never testified at the public hearing. During the public hearing there was conflicting expert testimony on the record as to whether the subject property is a potential future public water supply source and as to whether the development of the subject property would harm nearby potential public water supply sources. The potential harm has been identified: The destruction or degradation of a potential public water supply source. There is also evidence on the record that it is all but certain that the development of the subject property would destroy the potential water source if it is in fact located on the subject property. Likewise, the evidence is clear that the development of the subject property would degrade nearby water sources, if they exist, depending on their proximity to the subject property.
The Town Council was free to accept the testimony of the opponents' expert contradicting the findings of the proponent's expert. The Town Council has carried its burden of proof with regard to its concern over the loss of a potential water supply source.
The foregoing discussion of § 8-30g(c)(1) encompasses, in large measure, subsection (2) as well. That the Town Council is free to consider endangerment of a potential future source of public water, as "a substantial public interest in health safety or other matters which the [Town Council] may consider" is beyond cavil. CT Page 5577
The language of the Town Council's Reason #5 is arguably not in compliance with the mandate of § 8-30g(c)(3), since it finds that "these considerations outweigh the need for affordable housing at this site, especially because of the availability of other parcels in town suitable for affordable housing." The language of § 8-30g(c)(3) is, of course, "such public interests clearly outweigh the need for affordable housing." The court could remand to the Town Council for a clearer finding but, after considerable reflection, chooses to interpret Reason #5 as a proper statement of the balancing required by § 8-30g(c)(3), as to the need for affordable housing in the town.
As to § 8-30g(c)(4)'s requirement concerning consideration of reasonable changes to the proposal, the court accepts the Town Council's argument that loss of a potential public water supply is both a site specific issue and one which is implicated by development with or without "reasonable changes."
For the foregoing reasons, the appeal is dismissed.
KOLETSKY, J.