[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Edward Mackowski and Fairfield 2000 Homes Corp., bring this appeal pursuant to General Statutes § 8-30g
to a decision of the defendant, the Zoning Commission of the Town of Stratford. The plaintiffs submitted an application to the commission on February 5, 1995 as a special case under sections 20 and 5.3 of the Stratford Zoning Regulations to build a 43 unit apartment building for senior citizens that complies with §8-39A for affordable housing requirements. (Return of Record [ROR], Item 1) The property is in an RS-4 district which permits residence apartments only upon approval as a special case. (Stratford Zoning Regulations, § 5.1.7) The site, near the CT Page 12773 center of Stratford, comprises a total of 67,819 square feet in the center of the block surrounded by Judson Place, Main Street, East Broadway, and Elm Street.
The commission held public hearings on March 19, 1996 and April 16, 1996. The commission met on May 13, but after some discussion tabled further consideration. The commission then notified Mackowski by letter dated June 12, 1996. Notice of the denial was published in the Connecticut Post on June 18, 1996.
In an affordable housing appeal, "the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission, that (1) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (2) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (3) such public interests clearly outweigh the need for affordable housing; and (4) such public interests cannot be protected by reasonable changes to the affordable housing development. General Statutes § 8-30g(c). As noted in General Statutes § 8-30g(c)(1), the reasons for the commission's decision must be supported by "sufficient evidence." "Section 8-30g specifies an evidentiary standard only as to one part of the commission's four part burden on appeal, requiring that `the decision . . . be supported by sufficient evidence in the record. . . .' General Statutes § 8-30g(c)(1). . . ."Kaufman v. Zoning Commission, 232 Conn. 122, 152,653 A.2d 798 (1995). The remaining subdivisions or §8-30g(c) do not specify an evidentiary standard. Id.
Once a court finds sufficient evidence in the record to support the reason for denial of an application, it must then scrutinize the reason itself. To sustain its burden of proof under the remaining subdivisions of § 8-30g(c), the commission's reason must protect a substantial public interest, which outweighs the need for affordable housing, and cannot otherwise be protected. Town Close Associates v. Planning Zoning Commission, 42 Conn. App. 94, 98-99, 679 A.2d 378, cert. denied, 239 Conn. 914, 682 A.2d 1014 (1996). "The burden of proof in § 8-30g dictates the only effective reasons for a commission to deny an affordable housing appeal. That burden necessarily establishes the standards of the underlying proceeding." Wisniowski v. Planning Commission,37 Conn. App. 303, 314, 655 A.2d 1146, cert. denied, 233 Conn. 909, CT Page 12774658 A.2d 981 (1995).
At the June 10 meeting the commission voted to deny the petition based on the draft Memorandum of Decision prepared by the staff and dated June 6, 1996. The plaintiff agrees that this memorandum should be construed as the commission's official statement so the court may rely on this memorandum and need not search the record. National Associated Properties v. Planning Zoning Commission, 37 Conn. App. 788, 797-99, 658 A.2d 114, cert. denied, 234 Conn. 915, 660 A.2d 356 1995). When the commission gives reasons for its decision, the issue for the court is whether the reasons are supported by the record. Town CloseAssociates v. Planning Zoning Commission, supra,42 Conn. App. 98 n. 6.
The commission listed six reasons for its denial. The task for the court is to determine whether the reasons cited by the commission are supported by sufficient evidence, whether the decision is necessary to protect substantial interests in public health, safety and welfare, whether these interests outweigh the need for affordable housing, and whether the interests can be protected by reasonable changes. General Statutes § 8-30g(c).
Reason #l concerns "technical zoning deficiencies regarding the lot lines for this development." The developer seeks to combine two parcels, lots A and B, and redraw the line for a third, lot C, which has an existing non-conforming boarding house. The commission argues that these changes would have to be approved by the Zoning Board of Appeals. Additionally, with the proposed changes to lot C, the building would violate the minimum lot coverage regulation, and with the proposed removal of a garage on that lot, there would be insufficient parking for the residents and the reconfigured parking would violate the setback and size requirements.
Reason #2 concerns specific zoning violations of the proposed building. Sections 5.3.3 and 5.3.4 of the Stratford Zoning Regulations set minimum requirements for lot coverage, density and height. The maximum density for a residential building on this property is 10 units, and the building should cover no more than 17.5% of the lot, with a height of no more than 26 feet. The proposed building contains 43 units, with a lot coverage of 18% and height of 33 feet. The parking regulations in section 12.5.2 of the regulations require two parking spaces per unit, but the proposal only makes room for 66, and also violates CT Page 12775 the setback requirements in sections 12.7.2 and 12.11.
Section 8-30g does not allow nonconformance, by itself, as a reason to deny an affordable housing application. See Wisniowskiv. Planning Commission, supra, 37 Conn. App. 317. "The narrow rigorous standard of § 8-30g dictates that the commission cannot deny an application on broad grounds such as noncompliance with zoning." Id., 314. The developer argues that Stratford's Town Plan explicitly allows relaxing the regulations for affordable housing, specifically as to higher density and parking requirements for elderly housing. The developer has also offered some accommodations to cure the nonconformity of lot C by adjusting the parking spaces.
The commission has not indicated specifically how these zoning violations would injure a substantial public interest. Under traditional zoning review, such violations might be sufficient to deny a special permit, but under the affordable housing appeals statute, the commission is limited to considering adverse impacts on substantial public interests.
Consequently, reasons #1 and #2 fail to state a legitimate basis for denying the application because the commission did not have evidence before it that the violations of the zoning regulations implicate a substantial public interest in health and safety as required by General Statutes § 8-30g(c)(2).
The third and fourth reasons relate to the long term goals and policies in the Town Plan. Reason #3 reads: "There are several major inconsistencies with [the] goals, policies and recommendations of the Town's current Plan of Development." Reason #4 reads: "The proposal lacks sensitivity to the existing character of the surrounding neighborhood which has unique historic value, evidenced by its being listed on the National Register of Historical Places."
In its findings, the commission identifies three sections of the Town Plan relevant to the discussion of this development. Section 6.4 requires consideration of scale and density and discourages projects out of scale and character with surrounding neighborhoods. Section 6.5 encourages a variety of housing types that relate to the character of the existing neighborhoods. It also supports low rise elderly housing with accessible support CT Page 12776 services. Section 6.19 encourages long term preservation of historic structures and properties through adaptive reuse and discourages demolition of such structures.
Like zoning regulations, the Town Plan itself does not provide a basis for denying an affordable housing plan. A municipal plan of development is not binding on land use commissions and is advisory only. Dooley v. Town Plan Zoning Commission, 154 Conn. 470, 473, 226 A.2d 509 (1967);Old Farms Crossing Associates v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 547862 (June 6, 1996, Mottolese, J.). Inconsistencies with the Town Plan, therefore, do not necessarily implicate substantial public interests. Moreover, Stratford's Town Plan acknowledges the public interest in accommodating affordable housing.
In its summary of findings, the commission agrees that the location "appears to be a logical location for elderly housing," but finds the proposed building inconsistent with the policy of encouraging low rise housing for the elderly. The commission has not presented any evidence to show how a three-story building is inappropriate for elderly housing. In addition, the only evidence concerning the inappropriateness of the development to the area, which is composed of two-and three-story homes and boarding houses, some commercial buildings and mixed use buildings, is the height and bulk of the proposed building. The concern appears to be that the high unbroken line of its roof would alter the streetscape to the detriment of the neighborhood land be out of character" with the other buildings. "In most cases, the building height, if not totally unreasonable, would not normally constitute a substantial public interest in health, safety or other matters which the commission could legally consider that would outweigh the need for the affordable housing." United Progress v. ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 513392 (March 4, 1954, Berger J.)
"`[C]haracter of the neighborhood' reasons usually relate to feared diminution of property values rather than architectural or size and bulk considerations." Nichols v. Planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 540477 (June 9, 1995, Mottolese, J.). "Under § 8-30g the significance of protecting property CT Page 12777 values as a substantial public interest falls to a lower level in the hierarchy of importance. It is the view of this court that the legislature has already determined that an affordable housing development should not, solely by its nature, be considered harmful to property values." Pratt's CornerLimited Partnershi v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 508877 (June 21, 1993, Mottolese, J.) (9 Conn. L. Rptr. 291). Though the commission does list the potential for lowered property values in its summary of findings (ROR, Item 30, p. 1), no evidence was presented on the issue, so the court will not consider the validity of this factor. Town Close Associatesv. Planning Zoning Commission, supra, 42 Conn. App. 99.
The thrust of the commission's argument, however, is the potentially damaging effect the proposed building will have on the character of the neighborhood due to its proximity to the Stratford Historic District and the general age and architectural style of the other buildings surrounding the site. Additionally, it identifies a building currently located on parcel A which the plan shows as being razed. This building, 2278 Main Street, was constructed around 1860 and is listed on the National Register of Historic Places as a contributing structure to the district.
Our Supreme Court, in Smith v. Zoning Board of Appeals,227 Conn. 71, 85-86, 629 A.2d 1089 (1993), cert. denied,510 U.S. 1164, 114 S.Ct. 1190, 127 L.Ed.2d 540 (1994), found a relationship between the protection of public health and safety and consideration of historic factors. See also Figarsky v.Historic District Commission, 171 Conn. 198, 207-09, 368 A.2d 163
(1976) (the power to protect the general welfare' includes the authority to consider historical factors). Like property values, however, under § 8-30g the significance of protecting aesthetic and historic features may fall to a lower level in the hierarchy of importance. Pratt's Corner Limited Partnership v.Planning Zoning Commission, supra, 9 Conn. L. Rptr. 291.
The issue is not the preservation of a particular identified historic building, because the developers offered alternatives to razing the building currently on lot A, but the impact of the new building on the aesthetic and historic quality of this neighborhood. A similar question was taken up in UnitedProgress v. Planning Zoning Commission, supra, Superior Court, Docket No. 513392. In that case, the court considered a large residential development in the Borough of Stonington, which CT Page 12778 qualified as affordable housing. After reviewing evidence of Stonington's unique historical features, its level of preservation, and the fragility of the coastal area surrounding Stonington, the court found that Stonington's position as "a historic place of great importance" took the case out of out ordinary. In dismissing the developer's appeal, the court said that it was "not holding that historic factors, height limitations, density issues, or scenic vistas individually outweigh the need for affordable housing. Rather, it is the combination of all these factors and the physical characteristics of the Borough and this site which control this case." Id.
Though the court in United Progress v. Planning ZoningCommission, supra, Superior Court, Docket No. 513392, found that protection of historic factors in the case of Stonington was a substantial public interest, it did emphasize the unique confluence of factors contributing to this finding. On the scale of public interests, the character of the neighborhood, even taking into consideration historical features cannot outweigh the need for affordable housing except in the most extraordinary cases. There is no evidence in the record that the public interest in the aesthetic and historic factors of this neighborhood of Stratford is substantial enough to outweigh the need for affordable housing. These reasons, therefore, are insufficient to support the commission's decision.
Reason #5 is that the "scale, density and massiveness" of the development would have "adverse impacts on the health, safety, and welfare of the community." The commission acknowledges in its brief that although "density, in and of itself is not a substantial public interest that outweighs the need for affordable housing, the problems associated with the overcrowding of land, such as traffic generation and adequate parking, are significant health and safety issues which outweigh the need for 11 affordable housing units." (Defendant's Brief dated April 18, 1997, p. 6) The specific problems it cites as likely to be caused by this project are a reduced amount of 1, light and air, overcrowding, and increased traffic congestion.
Building coverage is at 18.4% of total land and the height is 33 feet, compared to the zoning limits of 17.5% and 26 feet. The commission states in its summary of findings that this deviation from the regulations plus the overall bulk of the building would have an impact on the amount of air and light to surrounding lots. (ROR, Item 30, p. 2) It is difficult to see CT Page 12779 after looking at the photographs of the block how this minimal deviation in a building in the center of the block would have an effect on the air and light of surrounding properties. The commission has presented no evidence as to how it would diminish light and air in a way that would adversely affect the health and safety of the residents.
As for overall density, the project calls for 29.5 dwelling units per acre, while the neighborhood surrounding the project has density values ranging from 2.6 dwelling units to 4 dwelling units per acre. Issues of density are fairly debatable. Luriev. Planning Zoning Commission, 160 Conn. 295, 309,278 A.2d 1799 (1971). In Nichols v. Planning Zoning Commission, supra, Superior Court, Docket No. 540477, the court discussed a "density based preference" built into the zoning regulations. The town's desire to maintain this level of density was held to be insufficient because the town could not point to any threat to public health from an increased density — "the density based reason reflects nothing more than the commission's value preference to maintain the current classification." Id. "In order to qualify as a legitimate basis for denial of this application, density must represent a substantial public interest in health, safety or other matters which the commission may legally consider.' "Id., quoting General Statutes § 8-30g(c)(2).
In contrast to Nichols, in which the developer sought a zone change for an undeveloped parcel of 4.2 acres, the increased density in this case involves a single building being placed within an already developed area with an existing density much less than that proposed for the one site. This imbalance of density may have an adverse impact on the infrastructure of municipal services. The engineering department raised some concerns about the capacity of the sewer main that would service the project. Any potential overburdening of the sewage system implicates a substantial interest in public health. See Frumento v. Zoning Board of Appeals, Superior Court judicial district of Hartford-New Britain at Hartford, Docket No. 532862 (July 3Q, 1996, Berger, J.) (17 Conn. L. Rptr. 391).
In a letter to the Commission, the Town Engineer writes, although sufficient capacity most likely exists for this development, the original sewer design did not account for this density and . . . continued development of this density would compromise the capacity of the trunk sewer." (ROR, Item 27, p. 3) The plaintiffs interpret this as meaning that only future CT Page 12780 development might pose a threat, but that overlooks the import of the appraisal — development of this density might lead to a compromised sewer system. The commission argues that it "was free to determine that the density of this structure would pose a significant health concern by inadequate sanitary sewage disposal." The letter is in fact less than optimistic about future development, saying only that in the absence of any engineering data, it was only likely to have sufficient capacity. The commission isn't required to prove the impact of the project. It is only necessary that there be sufficient evidence from which it could find a reasonable likelihood of an adverse impact on the sewer system. See Christian Activities Council v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 541990 (September 12, 1996, Koletsky, J.) (17 Conn. L. Rptr. 619) (potential for development to injure a future public water supply sufficient for denial); Greene v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 442131 (January 6, 1993, Berger, J.) (8 Conn. L. Rptr. 137) (unknown future of water supply source sufficient for denial).
It is submitted that this is sufficient evidence from which the commission could have concluded that the project posed a threat to the capacity of the sewage system, and that protecting the municipal infrastructure from potential threat is a substantial public interest. Moreover, it is submitted that this reason alone may be sufficient to support the dismissal of the appeal.
Burdening a neighborhood with too much on-street parking raises issues of congestion and safety, particularly during the winter months, and may rise to the level of a substantial public interest. See Rinaldi v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533603 (October 27, 1995, Leheny, J.). But there must be evidence that no reasonable accommodations could be made to provide sufficient off-street parking. Id. The commission was concerned that the plan provided only 1.5 parking spaces per unit, and that it provided insufficient setbacks from property, sometimes as little as two feet, limiting the possibilities of finding reasonable ways to create adequate parking. Many neighbors spoke about the on-street parking problem that currently exists, one neighbor describing the traffic flow on Judson Place as "horrendous" when both sides of the street CT Page 12781 were used for parking.
Traffic safety is without a doubt a substantial public interest warranting protection. Nichols v. Zoning Commission, supra, Superior Court, Docket No. 540577; Old Farms CrossingAssociates v. Planning Zoning Commission, supra, Superior court, Docket No. 547862. Moreover, it is not overall traffic that controls, but the density of the traffic. Stiles v.Town Council, 159 Conn. 212, 219, 268 A.2d 395 (1970). At the April 16 hearing, Irving Chann, of I.K. Chann Associates, Transportation Engineers, presented his report of traffic in the area, which included traffic volume counts, turning movement counts and trip generation rates. The report concludes that the traffic generated by this amount of elderly housing is small, with an overall increase in volume on Judson Place of between 1.5 and 3.3 percent. He also said that he believed there is more than adequate off-street parking, speculating that the planned parking will not be fully occupied because it is an elderly population.[1] This report only addressed the question of density in its turning movement analysis, in which the expert Iconcluded that service levels through the intersections would remain at an acceptable level at the afternoon peak hours, so there would be no backups or long queues.
One neighborhood resident reported that the public works project currently underway at the intersection of Main Street and East Broadway was undertaken because of the high volume of traffic through the streets. Other neighbors pointed out the East Broadway. Because this construction includes the installation of new traffic signals and a rerouting of traffic through this intersection, the traffic patterns will change as a result. Traffic on East Broadway will no longer be able to turn onto Main Street, meaning that more cars will likely be using Judson Place as the route for entering I-95. The proposed project has a single driveway for traffic to enter and exit from Judson Place. As mentioned above, neighbors also testified that on-street parking on Judson Place adds to the congestion at all times of the day and weekends from activities of the churches and organizations in the neighborhood, sometimes reducing the street to a single lane of traffic, a point the traffic engineer conceded. This evidence is sufficient to call into question the expert's turning movement analysis, and his conclusion about future traffic congestion during off-peak hours. The Supreme Court has approved of commission members relying on their own knowledge of the area to confirm facts to which area residents testify. Primerica v.CT Page 12782Planning Zoning Commission, 211 Conn. 85, 97-98,558 A.2d 646 (1989); Kaufman v. Zoning Commission, supra, 232 Conn. 157.
Consequently, it is submitted that the commission had sufficient evidence from which to conclude that the project as proposed would greatly add to traffic congestion in the area. Because traffic safety is a substantial public interest, this reason is also adequate to justify the commission's denial.
The final reason acknowledges the burden placed on the commission by § 8-30g, and concludes that "after careful consideration of the evidence on the record, the commission believes that the anticipated adverse impacts of this development on the neighborhood and the community as a whole far outweigh the need for the eleven units that would be created by this development. "It argues that the need for affordable housing in Stratford cannot justify this type of overdevelopment.
Evidence was presented in the staff report that Stratford did not actually have a lack of affordable housing, because there was sufficient housing that met an objective criteria of low cost housing based on current market rates, even though it did not meet the statutory definition of "affordable housing." Such an argument was rejected in WestHartford Interfaith Coalition, Inc. v. Town Council, supra,228 Conn. 498. "[T]here is no support in the statute or its legislative history for the defendants position. Section 8-30g
(a) explicitly limits the definition of affordable housing" to assisted housing' or deed restricted housing." Id., 520. The Act and its subsequent amendments "clearly reflect not so much a concern for housing conditions in individual municipalities but rather a more comprehensive statewide concern for the problem." Nichols v. Planing Zoning Commission, supra, Superior Court, Docket No. 540577. The commission's argument that the "need" for affordable housing is to be determined by external factors such as current market rates, or the developer's profitability, is unavailing.
The commission also questioned whether it is necessary for the residence to have such density in order to make it economically viable for the developer to provide 11 units at an affordable rate. It wanted some evidence from the developer that there is a legitimate economic reason to have that number of units in that small a space. The commissions fear is that the developer is using the Affordable Housing Appeals Act as a CT Page 12783 pretext for developing a larger project than this site can accommodate and that it has failed to demonstrate a rational nexus between the number of units necessary to achieve a profit margin and the total number of units proposed." The statute does not provide for consideration of the developer's profit margin. As long as an affordable housing project does not pose a threat to a substantial public interest, the economics of it are irrelevant. Section 8-2
Finally, the plaintiff argues that the denial violates the zoning enabling act at § 8-2 and is, in effect, exclusionary zoning under the rule of Builders Service Corp. v. Planning Zoning Commission, 208 Conn. 267, 545 A.2d 530 (1988). Section 8-2 mandates that the commission make some provision for affordable housing and prohibits the use of zoning to exclude low and moderate income families. The Builders Service case concerned a zoning regulation mandating a minimum floor area, which was challenged as unrelated to any legitimate purpose of zoning. The court held that it had the effect of excluding people of lesser means from certain parts of town, constituting economic discrimination. Idzzz, 298.
In contrast, the plaintiffs have not identified a particular rule or regulation as restrictive based on economics. Simply because they have labelled their development as affordable, a denial is not necessarily discrimination based on the affordability of the units.
It is submitted that the commission had legitimate reasons based on sufficient evidence to deny the proposal. The intense density of the project could be found to pose a threat to the capacity of the sewage system, and the addition of 43 units in this block would contribute significantly to an already congested traffic area. These interests cannot reasonably be protected with changes to this proposal, as only a plan with less density can alleviate the potential problems associated with this project.
Accordingly, the plaintiff's appeal is dismissed on the ground that the commission was justified in denying the application because it was necessary to protect the public interest in health and safety.
BELINKIE, JUDGE TRIAL REFEREE CT Page 12784