******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

AUTUMN VIEW, LLC, ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE
TOWN OF EAST HAVEN
(AC 41220)

DiPentima, C. J., and Prescott and Moll, Js.

*Syllabus*

The plaintiffs appealed to the trial court from the decision of the defendant,
the Planning and Zoning Commission of the Town of East Haven, denying
their application for approval of an affordable housing development.
The plaintiffs, owners of undeveloped real property in East Haven,
submitted, pursuant to statute (§ 8-30g), an affordable housing applica-
tion that sought to amend the zoning regulations to create a new mixed
income housing zone and to construct 105 detached single-family homes.
The defendant initially denied the plaintiffs' application on several
grounds, including, inter alia, that it had insufficient drainage, and the
plaintiffs subsequently revised their application to address those con-
cerns. At a hearing on the revised application, the defendant presented
the findings of an engineer, who had prepared a report on the plaintiffs'
revised application that had not been made available to the plaintiffs
until the day of the hearing and which raised concerns regarding the
revised application's storm water drainage system. Despite the plaintiffs'
requests to continue the hearing so they could review the engineer's
report, the defendant concluded the hearing that night and denied the
revised application on essentially the same grounds as the initial applica-
tion. Thereafter, the plaintiffs appealed to the Superior Court, which
sustained the appeal in part and remanded the case to the defendant
with respect to five issues related to storm water drainage. To comply
with the court's remand order, the plaintiffs hired an engineer to assist
them in addressing the storm water drainage issues and resubmitted
their application to the defendant with a revised storm drainage plan.
Subsequently, the defendant denied the plaintiffs' resubmitted applica-
tion on several grounds, including, inter alia, that the resubmission
failed to address the concerns of the defendant's engineer and that the
resubmitted application varied so much from the revised application
that it was actually an entirely new application. Thereafter, the plaintiffs
appealed to the Superior Court, which rendered judgment sustaining
the appeal, from which the defendant, on the granting of certification,
appealed to this court. *Held:*

1. The Superior Court did not err in concluding that the affordable housing
   application resubmitted in response to the court's remand order was
   not a new application; that court properly reviewed the differences
   between the remand site plan and the modified site plan and determined
   that the changes made to the remand application were done in order
   to comply with concerns regarding storm drainage, as the layout of the
   plan was fundamentally unchanged, changes were made in order to
   address the storm water drainage issues raised by the report of the
   defendant's engineer, and, thus, because the site plan submitted with
   the remand application was an updated plan consistent with the Superior
   Court's remand order, it did not constitute a new plan.

2. The defendant could not prevail on its claim that the plaintiffs' remand
   application, which included a new storm water drainage system, was
   beyond the scope of the remand order; the essential purpose of the
   remand order, which required the defendant to provide the plaintiffs with
   an opportunity to respond to the concerns of the defendant's engineer
   regarding storm drainage issues, was fulfilled when the plaintiffs' engi-
   neer worked with the defendant's engineer to resolve the storm water
   management issues and reached a consensus on the technical elements
   of the drainage system, the record demonstrated how the remand appli-
   cation satisfied the reservations of the defendant's engineer about the
   storm water drainage and, therefore, the remand application was well
   within the scope of the remand order.

3. The defendant could not prevail on its claim that the Superior Court
   improperly concluded that evidence that the application failed to comply

with town zoning regulations and that the storm water drainage system posed significant dangers to human health and safety did not support the defendant's denial of the applications: noncompliance with a zoning regulation alone was not sufficient to support the defendant's denial under § 8-30g (g), as the principal aim of the statute is to prevent a pretextual denial of an affordable housing application and § 8-30g (g) required the defendant to affirmatively prove that its decision to deny an affordable housing development was necessary to protect substantial public interests in health, safety, or other matters, that such public interests clearly outweighed the need for affordable housing, and that such public interests could not be protected by reasonable changes to the affordable housing development, and the defendant's listing of reasons why the affordable housing application was denied did not meet the standard required by § 8-30g (g); moreover, the defendant, in denying the different versions of the plaintiffs' applications, failed to demonstrate that there was any, much less sufficient, evidence in the record to showed that denying the affordable housing development was necessary to protect a substantial interest in health and safety, and the record indicated that the plaintiffs satisfactorily complied with the concerns of the defendant's engineer regarding the storm water management system.

Argued April 11—officially released September 24, 2019

*Procedural History*

Appeal from the decision of the defendant denying the plaintiffs' application for approval of an affordable housing development, brought to the Superior Court in the judicial district of New Haven and transferred to the judicial district of Hartford, Land Use Litigation Docket, where the matter was tried to the court, *Berger, J.*; judgment sustaining in part the plaintiffs' appeal and remanding the matter to the defendant for further proceedings; thereafter, the court rendered judgment sustaining the plaintiffs' appeal, from which the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Alfred J. Zullo*, for the appellant (defendant).

*Timothy S. Hollister*, for the appellees (plaintiffs).

*Opinion*

DiPENTIMA, C. J. "[T]he key purpose of [General Statutes] § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state." *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 511, 636 A.3d 1342 (1994). Accordingly, in passing the affordable housing statute, the legislature eliminated the deference traditionally given to commission judgments for affordable housing applications. See *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 716, 780 A.2d 1 (2001). This case exemplifies the significance of this aspect of the affordable housing statute enacted in 1989.

The defendant, the Planning and Zoning Commission of the Town of East Haven, appeals from the decision of the Superior Court, sustaining the appeal of the plaintiffs, Autumn View, LLC (Autumn View), Statewide Construction Corporation, and Vicki Imperato. On appeal, the defendant claims that the court improperly concluded that (1) the September 27, 2016 affordable housing application filed by the plaintiffs pursuant to § 8-30g was not a new application, (2) the September 27, 2016 application complied with a remand order issued by the Superior Court, (3) evidence regarding the failure to comply with town regulations did not support the defendant's denial of the application, and (4) evidence of how the storm water drainage aspects of the application posed significant dangers to human health and safety did not support the defendant's denial of the application.[1] We disagree and, accordingly, affirm the judgment of the Superior Court.

The record reveals the following facts and procedural history. The plaintiffs are the owners of 17.09 acres of undeveloped real property that includes frontage on Strong Street and South Strong Street and abuts the New Haven Municipal Golf Course. The property contains several abandoned structures but is otherwise undeveloped and contains no wetlands.

Pursuant to § 8-30g (b) (1), the plaintiffs submitted an affordable housing application on December 20, 2012, that sought to amend the East Haven zoning regulations to create a new "mixed income housing" zone, to rezone the property to the newly created zone and to approve a site plan to construct 105 detached single-family homes in common interest ownership with thirty-two homes deed restricted for forty years. To comply with the requirement of § 8-30g (a) (6) that at least thirty percent of the houses be price restricted, the plan set aside thirty-two homes to be offered at a reduced price. Sixteen homes were to be sold at sixty percent of the median price in East Haven, and the other sixteen would be sold at eighty percent of the median. Based on 2012 data, the reduced price homes would be offered at $155,175 and $222,084, respectively. The defendant

held a public hearing on the plaintiffs' application on February 6 and 20, 2013. In response to concerns raised during the hearings, the plaintiffs submitted revisions to the application that included changes to the detention basins, sidewalks and lighting plan. Despite these revisions, the defendant denied the application at a hearing held on March 6, 2013.[2] The defendant also suggested that the plaintiffs make a number of changes to the site plan and zone change request in their application.[3]

In accordance with § 8-30g (h),[4] the plaintiffs submitted a modified application to the defendant on March 27, 2013. The modified application responded to the defendant's reasons for denial[5] of the revised application and addressed the suggestions set forth by the defendant.[6]

On May 29, 2013, the defendant held a public hearing on the modified application. In preparation for this hearing, the defendant retained an engineer, Geoffrey Jacobsen, to review, criticize, and comment on the site plan submitted by the plaintiffs as part of the modified application. He prepared a report regarding the plaintiffs' plan submitted with their modified application, which was not made available to the plaintiffs until the public hearing on May 29, 2013. As a result, the plaintiffs were unable to review and respond to Jacobsen's criticisms. Despite repeated requests by the plaintiffs for a continuance in order to respond to the Jacobsen report, the hearing concluded that same night.

On June 5, 2013, the defendant denied the modified application for essentially the same reasons it had denied the plaintiffs' previous application.[7] On June 24, 2013, the plaintiffs appealed from the denial of the modified application to the Superior Court as provided in § 8-30g (h). On December 23, 2014, the Superior Court sustained the plaintiffs' appeal in part and remanded the case to the defendant for further proceedings. Specifically, the Superior Court remanded the modified application site plan and the corresponding proposed zone change to the defendant only with respect to five issues related to storm water management.[8] The court required the defendant to "schedule, as soon as reasonably possible, a meeting at which it will allow the plaintiffs to respond, comment and discuss with the [defendant] Jacobsen's analysis with particular attention to storm water management . . . and storm water quality . . . ."

In order to effectuate the court's remand order, the plaintiffs submitted another application to the defendant on September 27, 2016 (remand application).[9] The defendant held hearings on November 30 and December 8, 2016. At the outset, the plaintiffs' counsel provided an overview of the procedural history involving the application and the changes that had been made in response to the Superior Court's remand order. He emphasized how the purpose of the hearing was to

discuss the storm water issues on which the Superior Court's remand order had focused and to reach agreement about the technical comments on the storm water revisions in the remand application.

To prepare the site plan for the remand application, the plaintiffs retained an engineering firm, Milone and MacBroom, to develop the site plan and conduct storm water calculations. Ted Hart, an engineer from Milone and MacBroom, addressed the defendant and described how, in preparing the design work for the remand application, he and his team reviewed the 2013 site plan, the report by Jacobsen dated May 28, 2013, and the 2014 Superior Court's remand order. He explained in detail the new storm water system in the site plan for the remand application, emphasizing how this site plan addressed each of the five issues set forth in the remand order. Hart concluded by saying that "the plans and the storm water management design meets the comments in the 2013 review letter by Jacobsen Associates and . . . we have been back and forth with Jacobsen Associates and I believe we have addressed the comments. I met with [Jacobsen] this morning quickly and went through our last comments and responses and he is going to be going through our responses probably one more time."

The hearing was continued to December 8, 2016, when Hart testified that Jacobsen had reviewed the storm water plans prepared by Hart and his firm for the remand application. He further described his communications with Jacobsen regarding the remand application site plan. Jacobsen also addressed the defendant at that hearing and described his communications with Hart's office since the November 30, 2016 hearing. Jacobsen noted that the plaintiffs had agreed to accept any additional comments or conditions that he may have on any of the outstanding aspects of the site plan.

During the December 8, 2016 hearing, members of the defendant questioned the plaintiffs' counsel about the scope of the remand application. Some commissioners thought these revisions had changed the site plan so substantially that it could not be considered a new iteration but, instead, required a new application. The plaintiffs' counsel disagreed and described the minor changes that had been made to the modified application, most of which were made in order for the site plan submitted with the remand application to meet Jacobsen's concerns regarding the 2013 application. The defendant provided the following reasons for its decision to deny the remand application: (1) "The [plaintiffs] failed to respond to the remand order of the court as they failed to address Jacobsen's analysis as to the resubmission dated March 27, 2013, with particular attention to storm water management . . . and storm water quality. . . as contained in his report dated May 28, 2013"; (2) "[t]he submission to the [defendant] con-

stitutes an entirely new plan, which is not contemplated or allowed under . . . [§] 8-30g (h) or any other statute regulating affordable housing applications"; (3) "[t]he [plaintiffs] failed to prepare and resubmit hydrology reports, runoff calculations, and storm water impact analyses in response to Jacobsen's requests as to the resubmission dated March 27, 2013, and instead prepared an entirely new plan for a new development with a new drainage system thus supporting the [defendant's] original decision that the drainage system proposed in the March 27, 2013 plan could not be built as designed and would not function as designed"; (4) "[t]he new plan did not comply with . . . § 8-30g and is not a valid . . . § 8-30g [application] insofar as it carelessly fails to meet the 30 [percent] affordable housing 'set aside' requirement specified in . . . § 8-30g [and] [t]he plan further violates the [plaintiffs'] own regulations as contained in the definition of its [mixed income housing district] as well as [their] own affordability plan by failing to provide for 30 [percent] of the units to be set aside for affordable housing"; (5) "[t]he plan violates [their] own [mixed income housing district] setback provisions as to the location of the culverts and [fifteen] of the units"; (6) "[t]he plan failed to address the adequacy and effectiveness of the natural mechanical filtration mechanisms intended to treat runoff and the prevention of a discharge of solids into nearby water sources"; (7) "[t]he new plan contemplates a huge infrastructure project to connect to the storm water system with a new sewer hookup being built on Strong Street and down onto Robby Lane [and] [t]here was no evidence before the [defendant] as to the true scope of that project and its impact on the adjoining neighborhoods"; and (8) "[t]he new plan did not comply in several respects with the provisions relative to affordable housing development and the [defendant] did not have sufficient information to develop the appropriate conditions that would be necessary to approve it."

The plaintiffs appealed from the denial of their remand application to the Superior Court. The court heard argument on April 10, 2017, and issued its memorandum of decision on July 24, 2017. In sustaining the plaintiffs' appeal, the court concluded that the "record indicates that [the plaintiffs] satisfactorily complied with Jacobsen's concerns regarding the substantive water management modifications. Additionally, the [defendant] failed to comply with the mandatory review process of § 8-30g (g) and has not sustained its burden of proof under the statute." The defendant thereafter filed a petition for certification to appeal pursuant to General Statutes § 8-8a (o). We granted the defendant's petition, and this appeal followed.

We begin our analysis by setting forth the legal principles that guide our review. Section 8-30g is a remedial statute that exists outside of the traditional land use statutory scheme. See *Wisniowski* v. *Planning Com-*

*mission*, 37 Conn. App. 303, 317–18, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995). The legislature enacted the statute to address what the traditional land use scheme had failed to do, namely, to confront the affordable housing crisis in Connecticut. See id., 316–17.

Section 8-30g (g) provides in relevant part: "Upon appeal . . . the burden shall be on the commission to prove, based upon the evidence in the record compiled before such commission that the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. The commission shall also have the burden to prove, based on the evidence in the record compiled before such commission, that (1) (A) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (B) such public interests clearly outweigh the need for affordable housing; and (C) such public interests cannot be protected by reasonable changes to the affordable housing development."

Consistent with the remedial goals of this statute, § 8-30g (g) further provides that "[i]f the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it." Accordingly, the statute authorizes the reviewing court "to employ much more expansive remedies than are available to courts in traditional zoning appeals." (Internal quotation marks omitted.) *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, 162 Conn. App. 678, 710–11, 136 A.3d 24 (2016), aff'd, 326 Conn. 55, 161 A.3d 545 (2017); see also *Wisniowski* v. *Planning Commission*, supra, 37 Conn. App. 320 ("§ 8-30g (c) takes away some of the discretion that local commissions have under traditional land use law and allows the reviewing trial court to effect a zone change if the local commission cannot satisfy the statutory requirements for its denial of an application"); R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 51.5, p. 192 (§ 8-30g grants "more authority than provided for in other administrative appeals, and court can direct agency to approve project as is or with suggested modifications"); M. Westbrook, "Connecticut's New Affordable Housing Appeals Procedure: Assaulting the Presumptive Validity of Land Use Decisions," 66 Conn. B.J. 169, 194 (1992) (describing how appeal procedure of § 8-30g provides the reviewing "court great latitude" and "several options for providing relief to the developer").

The standard of review embodied in § 8-30g (g) requires the court to engage in a two part analysis. See *JPI Partners, LLC.* v. *Planning & Zoning Board*, 259

Conn. 675, 690, 791 A.2d 552 (2002), citing *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, supra, 256 Conn. 726–27. First, a reviewing court must "determine whether the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. . . . Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted." (Citation omitted; internal quotation marks omitted.) *River Bend Associates, Inc.* v. *Zoning Commission*, 271 Conn. 1, 26, 856 A.2d 973 (2004). If the record demonstrates that this standard is met, the reviewing court "must conduct a plenary review of the record and determine . . . whether the commission's decision was necessary to protect substantial interests in health, safety or other matters that the commission legally may consider, whether the risk of such harm to such public interest clearly outweighs the need for affordable housing, and whether the public interest can be protected by reasonable changes to the affordable housing development." Id. "Because the plaintiff[s'] appeal to the trial court is based solely on the record, the scope of the trial court's review of the [defendant's] decision and the scope of [an appellate court's] review of that decision are the same." (Internal quotation marks omitted). Id., 26–27, n.15.

I

The defendant first claims that the Superior Court erred by concluding that the affordable housing application filed by the plaintiffs pursuant to § 8-30g on September 27, 2016, was not a new application. The plaintiffs counter that the court properly determined that the remand application submitted on September 27, 2016, did not constitute a new site plan but, rather, was an updated plan submitted in accordance with its remand order pursuant to § 8-30g (g). We agree with the plaintiffs.

"Determining the scope of a remand [order] is a matter of law . . . [over which] our review is plenary." (Citations omitted.) *State* v. *Tabone*, 301 Conn. 708, 713–14, 23 A.3d 689 (2011). Accordingly, we review whether the Superior Court properly determined that the remand application was within the scope of the remand order under this standard.

The following additional facts are necessary for our discussion of this claim. At the December 8, 2016 hearing, defendant's chairman asked the plaintiffs' counsel: "After reading [this] . . . why wouldn't you with these major changes just supply us with a new application? . . . [T]here have been so many numerous changes, am I correct to state that, a modified site plan of this magnitude would have to come for a new hearing?" The plaintiffs' counsel responded: "[W]e actually considered

that and the answer and the conclusion that we came to is . . . it's basically the same plan. The streets are in the same place; they are in the same location. We have reduced the number [of units] down twice . . . [t]he question that would cause you to think about a new application would be if there was some substantial off site impact that was not part of the first application, the previous application. And we have reduced the impacts. We have responded to . . . Jacobsen's concerns, but it's basically the same plan." The defendant, however, concluded that the remand application was an "entirely new" application. For that reason, among others, the defendant denied this application.

The Superior Court reviewed the differences between the remand site plan and the modified site plan and determined that the changes that were made to the remand application were done in order to comply with Jacobsen's concerns. Specifically, the court noted that while there are four fewer units in the remand plan, the layout of the plan is fundamentally unchanged. The road widths, curbs, sidewalks, utilities, open space, parking, setbacks, landscaping and architecture are essentially the same as the March, 2013 modified application. The Superior Court further noted that the changes were made in order to address the storm water drainage issues raised by Jacobsen's report. These changes included modifications to detention ponds one and two and the addition of detention pond three in place of the club house and detention pond four in place of five units. We agree with the Superior Court's determination that these changes were made in response to Jacobsen's report. Thus, because the site plan submitted with the remand application was an updated plan consistent with the Superior Court's remand order; see General Statutes § 8-30g (g); it did not constitute a new plan. Further, on appeal to this court, the defendant provided limited analysis in support of its assertion that the remand application was truly a new application. Accordingly, we find no reason to reverse the Superior Court's determination that the remand application was not a new application.[10]

## II

The defendant next claims that the Superior Court erred by concluding that the September 27, 2016 application submitted by the plaintiffs complied with the court's remand order. The defendant claims that the Superior Court's language was "clear and unequivocal" in that it directed the plaintiffs to present additional evidence to the defendant about the modified application's storm water drainage system that had been submitted on March 27, 2013, before the remand order. Put another way, the defendant contends that the remand order allowed the plaintiffs to present additional information *only* about the storm water drainage plan as it was designed in the March, 2013 plan. Accordingly, the

defendant claims that the remand application, which included the new storm water drainage system, is beyond the scope of the remand order. This is an incorrect interpretation of the Superior Court's remand order.

"When a case is remanded for a rehearing, the trial court's jurisdiction and duties are limited to the scope of the order." *Leabo* v. *Leninski*, 9 Conn. App. 299, 301, 518 A.2d 667 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1286 (1987); see also *Tomasso Brothers, Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 643 n.3, 646 A.2d 133 (1994) (discussing how claim exceeding scope of remand to trial court is not properly part of current appeal). Remands to an administrative agency are subject to the same limitations. *Garden Homes Management Corp.* v. *Planning & Zoning Commission*, 191 Conn. App. 736, 764–65,       A.3d       (2019). In reviewing remand applications, there must be some "give and take" between local planning and zoning boards and the applicants before them. See *Frito-Lay, Inc.* v. *Planning & Zoning Commission*, 206 Conn. 554, 567, 538 A.2d 1039 (1988) ("[T]he very purpose of [a] hearing [is] to afford an opportunity to interested parties to make known their views and to enable the board to be guided by them. It is implicit in such a procedure that changes in the original proposal may ensue as a result of the views expressed at the hearing." [Internal quotation marks omitted.]).

The remand order from the Superior Court required the defendant to provide the plaintiffs with an opportunity to respond to Jacobsen's comments about the storm water drainage system. The exchanges between the defendant's and plaintiffs' experts over the course of a year exemplify the Superior Court's subsequent observation that "the lengthy administrative review process worked as intended; changes were made to an application as part of the review process with comments and further responses." As a result of this communication between Jacobsen and the plaintiffs' experts, the remand application contained a revised storm water drainage system that addressed the concerns contained in Jacobsen's report.

The record demonstrates how the remand application satisfied Jacobsen's reservations about the storm water drainage. At the November 30, 2016 hearing, Jacobsen discussed his communications with Hart, the plaintiffs' engineer, about the remand application site plan. He stated: "[T]here have been . . . some substantial improvements in the overall plan since 2013 . . . . [T]here has been a fair amount of back and forth between our office and . . . Hart's office in terms of addressing not only the 2013 comments, but the follow up comments that we had on November 11, [2016] and then an e-mail exchange with even additional follow up comments that we had over the course on December

2, [2016] and December 5, [2016]. Today we received I think probably . . . the third . . . revision of the storm water management report which we did look at today. We spent the better part of the day looking at [it]. We did not until this evening receive the actual plans. So, I haven't really looked at the plans. There were a number of, I would say, relatively minor comments that would have to be preferably looking at the plans and we haven't done that. The storm water management report addresses the three key criteria that are in the East Haven regulations and it has been designed in accordance with the guidelines established in the 2004 storm water quality manual. Now the basins that have [been] designed will retain the runoff."

Jacobsen continued: "So there's a substantial volume that's retained in these [storm water] basins before it ever overflows into the storm drainage system in Strong Street and then into Grannis Lake. So they have addressed the volume aspect that [is] in the regulations. They have addressed the peak discharge requirement in the regulations. And by virtue of the fact that there's no discharge from the basin until a 50 year . . . storm, they have addressed the suspended solids aspect because there will be no discharge. Now the state guidelines require what they called the water quality volume to be retained with the basin without overflowing it and that's the first inch . . . of runoff. And that's really to address what they call the first flush phenomenon which is the initial runoff on the site that falls on land, that falls on pavement and washes away that stuff off fairly quickly and if that deposits in the basin at the very beginning of the storm. And they have addressed that aspect." Jacobsen concluded his comments by saying that the plaintiffs had agreed to accept any new comments or conditions that Jacobsen may have going forward about the application.

Thus, the court correctly found that the plaintiffs had addressed and resolved Jacobsen's concerns regarding the drainage issues. This was in accordance with the remand order, which provided the plaintiffs with the opportunity to address Jacobsen's concerns. Thus, the essential purpose of the remand order was fulfilled when Hart, the plaintiffs' engineer, worked with Jacobsen to resolve the storm water management issues and the two parties reached a consensus on the technical elements of the storm water drainage system. Indeed, at oral argument before this court, the defendant's counsel stated that the remand application site plan, which includes the new drainage system, is "a better plan" than the site plan proposed in the 2013 applications. Jacobsen's concerns about the storm water drainage system were remedied in the remand application, which was well within the scope of the Superior Court's remand order.

Accordingly, we agree with the Superior Court's

determination that the remand application submitted by the plaintiffs on September 27, 2016, complied with the remand order.[11]

### III

The defendant next claims that the Superior Court erred by improperly concluding that (1) evidence regarding the application's failure to comply with town regulations did not support the defendant's denial of the revised and remand applications and (2) evidence of how the storm water drainage system described in the application submitted with the remand application posed significant dangers to human health and safety did not support the defendant's denial of the applications. Because the defendant failed to meet its burden to show that sufficient evidence existed in the record to support its denial of the revised and remand applications as necessary to protect health and safety, it cannot prevail on these claims.

The core requirement of § 8-30g requires a planning and zoning commission to prove that its decision to deny an affordable housing development is necessary to protect substantial public interests in health, safety, or other matters that the commission may legally consider; such public interests clearly outweigh the need for affordable housing; and such public interests cannot be protected by reasonable changes to the affordable housing development. General Statutes § 8-30g (g). There must be sufficient evidence in the record to support the commission's denial. General Statutes § 8-30g (g); see, e.g., *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 698–700. Sufficient evidence in the context of § 8-30g (g) is "less than a preponderance of the evidence, but more than a mere possibility. . . . [T]he zoning commission need not establish that the effects it sought to avoid by denying the application are definite or more likely than not to occur, but that such evidence must establish more than a mere possibility of such occurrence." (Internal quotation marks omitted.) *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 585, 735 A.2d 231 (1999). The defendant did not need to prove that there is a definite likelihood of a certain type of harm due to the development, but it did have to demonstrate that there is more than a mere theoretical possibility. See *River Bend Associates, Inc.* v. *Zoning Commission*, supra, 271 Conn. 26.

First, the defendant argues that the Superior Court should have considered the fact that the plaintiffs' applications did not comply with a particular East Haven zoning regulation[12] regarding the submission of a storm water management plan, including calculations of storm water runoff rates and inclusion of a hydrology report, with the modified plan on March 27, 2013, as support for the denial of the remand application submitted on September 27, 2013. At the January 11, 2017

hearing, Demayo, one of the defendant's members, argued that "the [plaintiffs'] decision not to prepare and submit hydrology reports, runoff calculations and storm water impact analysis in response to Jacobsen's analysis as to the resubmission dated March 27, 2013, and rather to prepare an entirely new plan for a new development with a new drainage system supports the [defendant's] original decision that the drainage system contemplated in the March 27, 2013 plan could not be built as designed and would not function as designed." As noted by the Superior Court, by submitting the remand application with a revised storm water drainage system, however, the previous forms of the plaintiffs' application and any accompanying noncompliance with East Haven zoning regulations had been superseded. It may well be that the 2013 versions of the application did include an inadequate storm water drainage system, but with the submission of the remand application, any such deficiency had been remedied. The application submitted on September 27, 2016, replaced the 2013 applications, and accordingly, any zoning noncompliance issues with those applications were not pertinent to the consideration of the 2016 application. Hart also testified during the hearing on the remand application that relevant East Haven zoning regulations and DEEP water quality standards had been met.

Failing to comply with a zoning regulation that is directed to protect public health and safety *may* satisfy the sufficient evidence requirement under § 8-30g (g). *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 698. The commission, however, must still demonstrate that denying an application on the basis of a failure to comply with a certain zoning ordinance is *necessary* under § 8-30g (g). Id. Noncompliance with a zoning regulation alone is not enough to support a commission's denial of an affordable housing development application under § 8-30g (g). See id., 698–99. The principal aim of § 8-30g (g) is to prevent pretextual denial of affordable housing applications. See id., 697. Section 8-30g (g) "does not allow a commission to use its traditional zoning regulations to justify a denial of an affordable housing application, but rather forces the commission to satisfy the statutory burden of proof." *Wisniowski* v. *Planning Commission*, supra, 37 Conn. App. 317; see also *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 716. In order for noncompliance of a zoning regulation to support a commission's denial of an affordable housing application filed pursuant to § 8-30g, the commission must further demonstrate, as part of its burden in an affordable housing application appeal, that compliance with such standards is necessary to protect the public interest, that the risk of harm clearly outweighs the need for affordable housing, and that there is no reasonable change to the affordable housing development that could be made to protect the

public interest. *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 699–700. Here, the defendant failed to demonstrate how the plaintiffs' purported lack of compliance with a zoning regulation would meet this burden required under § 8-30 (g). Thus, even if any noncompliance of the 2013 plans with East Haven zoning regulations was pertinent to the court's review of the defendant's denial of the September 27, 2016 remand application, the defendant failed to carry its burden under § 8-30g (g).

In addition, the defendant argues that the court failed to consider evidence in the record about the risks to health and safety posed by both the March 27, 2013 modified application and the September 27, 2016 remand application. Here, too, the defendant failed to meet its burden under § 8-30g (g). The defendant argues that because it provided reasons why the plaintiffs' applications were denied, the defendant met its burden under § 8-30g (g). This is an inaccurate characterization of the defendant's statutory duties under § 8-30g (g). As noted by the Superior Court and discussed previously, § 8-30g (g) places an *affirmative* duty on a commission to demonstrate that its denial of an application is necessary to protect the public interest, that the risk of harm clearly outweighs the need for affordable housing, and that there is no reasonable change to the affordable housing development that could be made to protect the public interest. Here, in denying the different versions of the plaintiffs' applications, the defendant failed to demonstrate that there is any, much less sufficient, evidence in the record that shows that denying the affordable housing development was necessary to protect a substantial interest in health and safety. Simply listing reasons why an affordable housing application was denied does not meet the standard of § 8-30g (g). Thus, the Superior Court correctly determined that the defendant failed to carry its burden pursuant to § 8-30g.

In conclusion, we agree with Superior Court's apt summary sustaining the plaintiffs' appeal: "The record indicates that [the plaintiffs] satisfactorily complied with Jacobsen's concerns regarding the substantive water management modifications. Additionally, the [defendant] failed to comply with the mandatory review process of § 8-30g (g) and has not sustained its burden of proof under the statute. Specifically, the [defendant's] decision on remand is not supported by sufficient evidence in the record. There is not even a theoretical possibility of harm articulated by the [defendant]. Even if there were and assuming arguendo that storm water management is a substantial public interest, a review of the record does not indicate how the [defendant's] denial on remand is necessary to protect the public interest, how the public interest outweighed the need for affordable housing, or that the public interest could not be protected by changes to the plan."

The judgment is affirmed.

In this opinion, the other judges concurred.

[1] We address the defendant's third and fourth claims together as the issues are intertwined.

[2] The defendant provided the following reasons for denying the application: (1) "[T]he project is simply too dense and almost quadruples the allowable development in [the] zone"; (2) "[t]he application is not consistent with the neighborhoods"; (3) "[t]he application fails to comply with [East Haven's] standard relative to roads and sidewalks," which require thirty foot roads and four and one-half feet sidewalks, (4) "[t]he plan has insufficient drainage"; (5) "[t]he application, because of its density, would put a severe strain on public services including, but not limited to, education"; (6) "[t]here are other larger sites in [East Haven] that would more readily accommodate the development with this number of units"; (7) "[t]he proposed application, as [a] § 8-30g proposal, fails to provide an adequate affordability plan in that [the plaintiffs] failed [to] present an accurate calculation of sales price[s] for both 60 [percent] and 80 [percent] median income units an[d] they have failed to designate an affordable manager that would manage the plan throughout the [forty] years of its life"; (8) the plan fails to comply with frontage guidelines and there should be at least 30 percent open space; and (9) "[t]he allowable zone definition gives rise to abuse as other large parcels in other parts of [East Haven] can be converted to a . . . mixed income housing development in contravention of [East Haven's] [p]lan of [d]evelopment."

[3] These suggested changes were as follows: (1) The project consist of no more than sixty units, (2) have thirty foot roadways and four and one-half foot sidewalks, (3) minimum road frontage of sixty feet, (4) minimum sidelines of fifteen feet, (5) minimum front yard setbacks of twenty-five feet, (6) minimum rear yard setbacks of thirty feet from the retention basin and twenty five feet otherwise, (7) retention basins in the middle of the development, (8) correct pricing calculations regarding the median price of the affordable homes, (9) amended dimensional standards, (10) sufficient off street overflow and visitor parking and (11) an agreement with an administrator that would be available after completion of the project to administer the program for the forty years of its term.

[4] General Statutes § 8-30g (h) provides, in relevant part, that an applicant whose affordable application is denied can "submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. . . ."

[5] The modified application stated: (1) "Density, variation from an existing approval, and allegations regarding lack of consistency with the [p]lan of [c]onservation and [d]evelopment are not valid reasons for denial of an application pursuant to § 8-30g"; (2) "[t]he homes proposed are comparable in size and quality to many of those in the surrounding residential neighborhood"; (3) "[t]he application and related [mixed income housing] [d]istrict regulation have been revised to require and provide for roads [thirty] feet wide and sidewalks [four and one-half] feet wide"; (4) "[t]he development discharges to the public storm system, with no increase in the rate of runoff, and with appropriate storm water renovation"; (5) "[f]iscal zoning and, in particular, a desire to exclude school children, is not a valid reason to deny any application pursuant to § 8-30g"; (6) "[n]one of the owners of [other large parcels in East Haven] have proposed to develop them for affordable housing"; and (7) "[t]he affordability plan has been revised" to correct the sales prices and provides for an administrator.

[6] The plan submitted with the modified application also addressed the suggestions provided by the defendant in the following ways: (1) "Limiting the maximum number of units to [sixty] is not necessary to protect public health and safety"; (2) "[t]he plan has been revised to include [thirty] foot wide roadways and [four and one-half] foot wide sidewalks"; (3) "[m]inimum road frontage of [sixty] feet is not necessary to protect public health and safety"; (4) "[m]inimum sidelines of [fifteen] feet are not necessary to protect public health and safety"; (5) "[m]inimum front yard setbacks of [twenty-five] feet are not necessary to protect public health and safety"; (6) "[m]inimum rear yard setbacks of [thirty] feet from the detention basins and [twenty-five] feet otherwise are not necessary to protect public health and safety" but "[t]he minimum rear yard setback has been increased to [twenty] feet"; (7) "[r]elocation of the detention basins to the middle of the property is not necessary to protect public health and safety"; (8) "[r]evised calculations

are provided"; and (9) "[t]he revised affordability plan provides for the designation of an [a]dministrator."

[7] Specifically, the defendant stated: (1) "The project remains too dense and is inconsistent with surrounding neighborhoods"; (2) "[t]he project fails to abide by [the plaintiffs'] own development standards as to setbacks and building location"; (3) "[t]he project fails to comply with [East Haven's] standards relative to [four and one-half] foot sidewalks on both sides of the street and street lights to ensure health and safety of the homeowners"; (4) "[t]he plan has insufficient off-street parking for residents and visitors to ensure health and safety in the event of fire or police emergency"; (5) "[t]he plan has insufficient drainage" and lacked an agreement to drain into Grannis Lake; (6) the application was conclusory and devoid of data concerning run-off; (7) "[t]he application, because of its density, would put a severe strain on public services including but not limited to education"; (8) "[t]he retention basin [number one] . . . is inappropriate and inconsistent with [East Haven's] zoning regulations and . . . [s]tate [g]uidelines for soil erosion" and is unsafe; (9) the dam is "a structure [that] cannot be located in a setback area"; and (10) "[t]he proposed application . . . fails to provide an adequate affordability plan . . . and fails to designate an affordable manager . . . ."

[8] The five issues involving storm water drainage were: (1) "[T]he plan has insufficient drainage"; (2) "the application is conclusory and devoid of data concerning runoff"; (3) "retention basin number one is inappropriate and fails to meet both the zoning regulations and the state guidelines for soil erosion"; (4) "the dam is unsafe"; and (5) "the dam is a structure that cannot be located in a setback area."

[9] Prior to the plaintiffs' submission of the remand application, the defendant had filed with this court a petition for certification to appeal the decision of the Superior Court from December 23, 2014. The defendant also sought a stay from any action until this court rendered a decision on the petition on April 17, 2015. Both were denied on April 22, 2015.

[10] The defendant also argued sparingly in its brief and at oral argument that the remand application failed as an affordable housing application under § 8-30g because the site plan indicated that less than thirty percent of the units was set aside as affordable housing. The plaintiffs demonstrated that the number of units on the site plan was incorrectly marked due to a typographical error. The Superior Court agreed with the plaintiffs' explanation and also determined that the defendant could have approved the application on the condition that the development contain the statutorily required thirty percent affordable units. Here, the defendant has not demonstrated that there is any reason for us to overturn the Superior Court's determination that the error in the number of units marked on the remand site plan was no more than a typographical error.

[11] This court recently decided *Garden Homes Management Corp.* v. *Planning & Zoning Commission*, 191 Conn. App. 736,      A.3d      (2019). That case also involved a denial of a § 8-30g application. Following the appeal by the plaintiffs to the Superior Court, the court issued a remand order for the "issue of the [plaintiffs'] most recent redesign of the access way and apartment building . . . for due consideration by the commission. Id., 744. The Superior Court also ordered that the plaintiffs "should submit to the commission a fully engineered site plan indicating the provision of the turning radii necessary to allow [firetrucks] and other large vehicles to turn around and exit the site with minimal reverse travel, both via elimination of four parking spaces and three units . . . and by other means." Id., 744–45. On remand, the plaintiffs submitted a revised site plan that proposed reducing the number or units and replacing four parking spaces with a fire lane that would serve as a turnaround for firetrucks. Id., 745. During the hearing before the defendant regarding the revised plan, the defendant reviewed a new report that repeated and expanded on concerns regarding the access way and lack of a secondary entrance, matters on which the Superior Court ruled, as well as additional information that had not been before the defendant previously. Id., 763. The defendant again denied the application. The plaintiffs subsequently appealed to the Superior Court, which sustained the plaintiffs' appeal. The Superior Court found that the defendant had gone outside the scope of the limited remand by "instead of focusing on the issue that was remanded, using the remand to bolster its previous objections, which had been ruled on and rejected." Id. This court agreed with the Superior Court and rejected the defendant's appeal. This court concluded that the "commission had its chance, and was not entitled to treat the court's limited remand as a second bite at the apple." Id., 765.

In *Garden Homes*, the defendant exceeded the scope of the remand order by reviewing additional information on issues that either the court previously had ruled on or had not been reviewed by the commission earlier, though they had the opportunity to do so. The commission did not find that there were new health and safety risks posed by the *revised* site plan. Rather, the defendant used the remand order as an opportunity to rehash past arguments that had been reviewed and rejected. Id., 763.

Here, the plaintiffs did not exceed the scope of the remand because the changes made to the remand site plan were done in furtherance of the court's remand and to address Jacobsen's concerns about storm water drainage.

Our conclusion that these revisions do not constitute a new plan does not foreclose the opportunity for planning and zoning commissions to challenge revisions in remand plans that pose substantial risks to health and safety. See § 8-30g (g). Just as the defendant in *Garden Homes* was unable to consider new information that was beyond the scope of the remand order, the plaintiffs here similarly would be barred from making significant changes to the site plan that were unrelated to the purpose of the remand order. An example of an unrelated change would be if the plaintiffs *added* four units to the site plan to increase the number of units, as opposed to removing four units in order to add another detention pond. In such an instance, the additional units had not been added in order to satisfy the remand order's focus on storm water drainage and the plaintiffs would have improperly gone beyond the scope of order. In addition, the defendant would have been able to apply the mandatory review of § 8-30g to see if the additional units pose a risk to the health and safety of the community.

[12] Section 48.5.7 of the East Haven Zoning Regulations requires "calculations of storm water runoff rates, suspended solids removal rates, and soil infiltration rates before and after completion of the activity being proposed in the application." Section 48.5.8 requires "a hydrology study of predevelopment site conditions. Said study shall be conducted at the level of detail commensurate with the probable impact of the proposed activity and should extend downstream to the point where the proposed activity causes less than a five (5) percent change in the peak flow rates."

---